RICHARD G. PRUITT, EMPLOYEE-PLAINTIFF v. KNIGHT PUBLISHING COMPANY, EMPLOYER-DEFENDANT AND TRAVELERS INSURANCE COMPANY, CARRIER-DEFENDANT

No. 110

(Filed 29 January 1976)

1. Master and Servant § 94— workmen's compensation — agreement between employer and employee — filing with Industrial Commission

G.S. 97-82 provides that an employer and an injured employee may reach an agreement in regard to compensation under the Workmen's Compensation Act, execute a memorandum of the agreement in the form prescribed by the Industrial Commission, and file it with the Commission for approval.

2. Master and Servant § 94— workmen's compensation — agreement for compensation approved by Industrial Commission — binding effect

An agreement for the payment of compensation, when approved by the Industrial Commission, is as binding on the parties as an order, decision or award of the Commission unappealed from or an award of the Commission affirmed upon appeal. G.S. 97-17.

3. Master and Servant § 94— workmen's compensation — compensation agreement between employer and employee — binding effect

Plaintiff was bound by a written agreement on I. C. Form 26 dated 6 June 1974, and approved by the Commission, wherein defendants agreed to pay and plaintiff agreed to accept compensation based on a 10 percent permanent partial disability of his back, since there was no evidence in the record suggesting error due to fraud, misrepresentation, undue influence or mutual mistake.

PURSUANT to G.S. 7A-30(2) defendants appeal from decision of the Court of Appeals, 27 N.C. App. 254, 218 S.E.

2d 876 (1975), reversing the order and award of the North Carolina Industrial Commission entered 25 February 1975.

For several years prior to 30 November 1972 plaintiff Richard Pruitt was employed by defendant Knight Publishing Company in its printing plant. Plaintiff's job required him to handle heavy printing plates, and on 30 Novembber 1972 he sustained an accidental injury to his back under compensable circumstances.

All jurisdictional facts were stipulated. Defendants admitted liability under the North Carolina Workmen's Compensation Act and paid plaintiff compensation at the rate of $56.00 per week, the maximum at that time, from 1 December 1972 until 1 December 1973 during which time he was temporarily totally disabled as a result of the injury to his back.

During the course of medical treatment, plaintiff was referred to Dr. J. Leonard Goldner at Duke University Medical Center for examination, treatment, and evaluation. The record reveals that Dr. Goldner had treated plaintiff for a back injury sustained in an automobile accident in 1961 and had performed a spinal fusion on plaintiff's back in 1963. The prior injury did not arise while plaintiff was serving in the Army or Navy of the United States and did not occur under compensable circumstances.

Dr. Goldner was of the opinion that plaintiff's second injury at Knight Publishing Company aggravated the preexisting condition in plaintiff's back so that on 10 May 1974 plaintiff had a 35 percent permanent partial disability of the spine with 25 percent attributable to the first injury and lumbar fusion and 10 percent attributable to aggravation of the preexisting condition by the subsequent injury at defendant's printing plant.

On or about 6 June 1974 plaintiff and defendants entered into a written agreement on Industrial Commission Form 26 whereby the defendant carrier (Travelers Insurance Company) agreed to pay plaintiff compensation at the lawful rate of $56.00 per week for a 10 percent permanent partial disability of the spine and plaintiff agreed to accept same. The agreement was filed with and approved by the Industrial Commission, and on 11 June 1974 the Commission entered its award based thereon.

On 17 June 1974 plaintiff, having employed counsel, filed with the Industrial Commission an "Application for Review of the Award," contending that he was entitled to compensation for a 35 percent, rather than a 10 percent, permanent partial disability of his back. The Commission thereupon set the matter for hearing in Durham on 1 November 1974 before Deputy Commissioner Denson for the purpose of taking the testimony of Dr. J. Leonard Goldner. Dr. Goldner was unable to be present on the hearing date, and the parties, through their counsel of record, stipulated that Dr. Goldner, if present, would testify in accordance with his medical report dated 18 February 1974, his orthopedic note dated 10 May 1974, and his 12 August 1974 response to a letter from plaintiff's counsel dated 9 July 1974. By stipulation, these writings were received in evidence to be treated as Dr. Goldner's testimony.

Based upon Dr. Goldner's stipulated testimony, and other stipulations not pertinent to the controversy, Deputy Commissioner Denson found as a fact and concluded as a matter of law that there must be "a causal relationship between the injury and the disability and that relationship has been established by Dr. Goldner at a 10% disability of the back." From an award compensating him for only 10 percent permanent partial disability of the back, plaintiff appealed to the Full Commission where the opinion and award of the deputy commissioner was affirmed. Plaintiff appealed to the Court of Appeals and that court reversed, holding that plaintiff was entitled to compensation for a 35 percent permanent partial disability of his back. Clark, J., dissented, and defendants thereupon appealed to the Supreme Court as of right, assigning errors noted in the opinion.

*Spears, Spears, Barnes, Baker & Boles by Alexander H. Barnes, attorneys for defendant appellants.*

*Palmer, Pittman & Campbell, P.A., by Bryan W. Pittman, attorneys for plaintiff appellee.*

HUSKINS, Justice.

We note at the outset that G.S. 97-33, pertaining to the prorating of permanent disability between injuries compensable under G.S. 97-31 and injuries sustained in military service or in another employment, is not applicable to this case. That statute is designed to prevent double recoveries. See *Schrum v. Upholstering Co.*, 214 N.C. 353, 199 S.E. 385 (1938). Likewise,

G.S. 97-34 and G.S. 97-35 are inapplicable here. Application of those statutes is restricted to those instances where the employee (1) receives an injury for which compensation is payable while he is still receiving or entitled to compensation for a previous injury in the same employment, or (2) receives a permanent injury specified in G.S. 97-31 after having sustained another permanent injury in the same employment. Here, plaintiff's earlier back injury arose out of a noncompensable automobile accident, separate and apart from any employment whatever. We therefore put aside all questions raised concerning these statutes.

This appeal presents two determinative questions:

1. Is plaintiff bound by the written agreement on I. C. Form 26 dated 6 June 1974, and approved by the Commission, wherein defendants agreed to pay and plaintiff agreed to accept compensation based on a 10 percent partial disability of his back?

2. Where an employee is paid compensation for a period of temporary total disability caused by a compensable injury which materially aggravated a preexisting 25 percent permanent partial loss of use of the back so that the employee had a 35 percent permanent partial loss of use of the back at the end of the healing period, is the employee entitled to compensation under G.S. 97-31 (23) for 10 percent or 35 percent permanent partial loss of use of the back?

The Court of Appeals did not decide the first question under the mistaken notion that all parties had stipulated before the hearing commissioner that "[t]he sole question for determination in this case is whether allocation of the disability to plaintiff's back as rated by Dr. Goldner should be prorated, or whether the defendants should bear the entire responsibility for the disability." The quoted language follows the last stipulation to which the parties agreed but is not a part of it. It is the conclusion reached by Deputy Commissioner Denson as to the question involved in this case following the hearing conducted before her in Durham on 1 November 1974. The inadvertence is understandable in view of the proximity of the quoted language to the stipulations.

We now consider the questions in the order listed.

[1]   G.S. 97-82 provides that an employer and an injured employee may reach an agreement in regard to compensation under

the Workmen's Compensation Act, execute a memorandum of the agreement in the form prescribed by the Industrial Commission, and file it with the Commission for approval. "If approved by the Commission, thereupon the memorandum shall for all purposes be enforceable by the court's decree as hereinafter specified." In approving a settlement agreement the Industrial Commission acts in a judicial capacity and the settlement as approved becomes an award enforceable, if necessary, by a court decree. *Biddix v. Rex Mills, Inc.*, 237 N.C. 660, 75 S.E. 2d 777 (1953). The wisdom of the statutory provision authorizing voluntary agreements in the manner prescribed by the Commission has been demonstrated by the fact that, through the years, more than 95 percent of all claims for compensation based on industrial injuries have been disposed of by agreements executed in conformity with the statute. *See Smith v. Red Cross,* 245 N.C. 116, 95 S.E. 2d 559 (1956).

G.S. 97-17 provides:

"Nothing herein contained shall be construed so as to prevent settlements made by and between the employee and employer so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this Article. A copy of such settlement agreement shall be filed by employer with and approved by the Industrial Commission: Provided, however, that no party to any agreement for compensation approved by the Industrial Commission shall thereafter be heard to deny the truth of the matters therein set forth, unless it shall be made to appear to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Industrial Commission may set aside such agreement."

[2] In interpreting and applying G.S. 97-17 and G.S. 97-82, it has been uniformly held that an agreement for the payment of compensation, when approved by the Commission, is as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal. *Tabron v. Farms, Inc.*, 269 N.C. 393, 152 S.E. 2d 533 (1967); *White v. Boat Corp.*, 261 N.C. 495, 135 S.E. 2d 216 (1964); *Tucker v. Lowdermilk*, 233 N.C. 185, 63 S.E. 2d 109 (1951). The Commission's approval of settlement agreements is as conclusive as if made upon a determination of facts in an adversary proceeding. *Stanley v. Brown,* 261

N.C. 243, 134 S.E. 2d 321 (1964). The unambiguous language of G.S. 97-17 prohibits all parties to any agreement for compensation, when approved by the Commission, to deny the truth of the matters therein set forth unless it is made to appear to the satisfaction of the Commission "that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Industrial Commission may set aside such agreement." *Neal v. Clary*, 259 N.C. 163, 130 S.E. 2d 39 (1963).

[3] On the record before us the first question must be answered in the affirmative. Plaintiff is bound by the Commission-approved written agreement on I. C. Form 26 dated 6 June 1974 where defendants agreed to pay and plaintiff agreed to accept compensation based on a 10 percent permanent partial disability of his back. There is no evidence in the record suggesting error due to fraud, misrepresentation, undue influence or mutual mistake. In his application for review, plaintiff merely states that the agreement "should be disapproved, set aside, voided, or modified." He requested the Commission to reconsider the evidence, receive further evidence, rehear the parties and amend the award on the grounds that (1) at the time plaintiff signed the agreement to accept compensation based on a 10 percent permanent partial disability of his back he was without legal counsel; (2) the parties were mutually mistaken about the meaning of Dr. Goldner's medical reports; (3) plaintiff believed Dr. Goldner would be offended if he declined to agree to the doctor's 10 percent disability rating; (4) plaintiff was extremely reluctant to sign the agreement, did not have a copy of Dr. Goldner's medical report and was induced by defendants to believe that Dr. Goldner had rated his compensable disability at only 10 percent; (5) prior to his injury on 30 November 1972 plaintiff had no incapacity to work and earn wages and as a result of said injury "is no longer capable of performing the heavy physical work and is now one-hundred (100%) percent unable to work at his trade," and (6) plaintiff has not received payment based on the 10 percent disability rating and does not intend to accept such payment until further action by the Commission. Only ground No. (4) has any tendency to suggest error due to fraud, misrepresentation, undue influence or mutual mistake, and there is no evidence in the record—none whatever—to support that allegation.

In fact, the stipulated testimony of Dr. Goldner constitutes *all* the evidence in the record before us. Absent evidence from

which the Commission may find fraud, misrepresentation, undue influence or mutual mistake in the execution of the agreement, all parties are bound by the written, Commission-approved agreement to pay and accept compensation based on a 10 percent permanent partial loss of use of the back.

Since the approved agreement is binding on the parties unless and until set aside by the Commission, we neither reach nor decide the other interesting question posed.

For the reasons stated, the decision of the Court of Appeals is reversed. The case will be remanded by that court to the North Carolina Industrial Commission for disposition in accordance with this opinion. If plaintiff desires to attack the agreement for fraud, misrepresentation, undue influence, or mutual mistake, and has evidence to support such attack, he may make application in due time for a further hearing for that purpose. In such event, the Industrial Commission shall hear the evidence offered by the parties, find the facts with respect thereto, and upon such findings determine whether the agreement was erroneously executed due to fraud, misrepresentation, undue influence or mutual mistake. If such error is found, the Commission may set aside the agreement, G.S. 97-17, and determine whether a further award is justified and, if so, the amount thereof. If not, the case is closed, subject to be reopened for the reasons stated in G.S. 97-47, but not otherwise.

Reversed and remanded.