The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Based upon an agreement between the parties on Industrial Commission Form 21, dated January 7, 1991, and approved by the Commission February 15, 1991, the undersigned find as fact and concludes as matters of law the following, as stipulations, in I.C. No. 007516:
STIPULATIONS
1. All parties hereto are subject to and bound by the North Carolina Workers' Compensation Act.
2. Consolidated Risk Management Services is the servicing agent for the self-insured defendant employer, Carolinas Medical Center.
3. On September 18, 1989, plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant employer.
4. The accident resulted in a lumbar fusion at L3-4 left side.
5. The plaintiff's average weekly wage was sufficient to establish the maximum statutory compensation rate of $376.00 for the year 1989.
In Case No. 156284, the parties stipulated and agreed to the following, which the undersigned find as fact and concludes as matters of law as
ADDITIONAL STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant Gaston Memorial Hospital (GMH) regularly employing three or more employees.
2. The employer-employee relationship existed between the plaintiff and the defendant employer.
3. Amerisure Insurance Company is the compensation carrier on the risk for the defendant GMH.
4. On April 26, 1991 plaintiff was involved in an accident.
5. Plaintiff's average weekly wage was such that the maximum statutory compensation rate for the year 1991 is applicable.
At the initial hearing it was agreed that medical records of GMH could be received for the record as Stipulated Exhibit 1.
Subsequent to the initial hearing, the parties agreed that the office note of Dr. David DuPuy dated December 14, 1992 could be received for the record as Stipulated Exhibit 2.
Also subsequent to the initial hearing, it was agreed that plaintiff was temporarily totally disabled from September 9, 1991 to January 21, 1992 following fusion surgery September 9, 1991 (Stipulated Exhibit 3).
On December 14, 1992 the parties deposed Dr. David N. DuPuy, an orthopedic surgeon. The transcript of the deposition has been received for the record. Attached to the transcript of Dr. DuPuy's deposition as Exhibit 1 is a letter from Dr. DuPuy to GMH's counsel dated May 26, 1992. The objection made at the deposition is OVERRULED.
On December 15, 1992 the parties deposed Dr. Todd M. Chapman, an orthopedic surgeon. The transcript of the deposition has been received for the record. Attached to the transcript as Deposition Exhibit 1 are correspondence and medical records of Dr. Chapman, and as Deposition Exhibit 2, a letter dated August 26, 1991 from Dr. Chapman to plaintiff's counsel.
* * * * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is a registered nurse and nurse manager with advanced professional degrees in her field.
2. In 1981 plaintiff had a laminectomy and partial diskectomy at the L3-4 level. The surgery was not related to an accident or her then employment with the Orthopedic Hospital of Charlotte. She saw her surgeon once after the operation. Eight weeks after the surgery, she returned to work to a medical unit with no lifting restrictions placed on her by her physician.
3. Plaintiff resumed full duties, including direct patient care in a 51-bed orthopedic unit. Returning to her regular job as an assistant manager, she had both charge duties and direct patient care responsibilities. She worked a 10 to 12 hour day. She never was absent from work for back-related problems.
4. After her 1981 surgery plaintiff had two normal pregnancies and deliveries with just normal back pain. She played tennis, engaged in aerobics, finished her bachelor's degree, and obtained her master's degree, commuting to Greensboro.
5. Never at any time prior to the industrial accidents that are the subject of this action was an impairment rating assigned to the 1981 surgery.
6. Plaintiff left Orthopedic Hospital and began her employment at Carolinas Medical Center (CMC) in August of 1987 as head nurse on the orthopedic trauma unit. She was injured on the job on September 18, 1989 while lifting a patient weighing 250 pounds, and on March 30, 1990 had an anterior lumbar fusion, L3-4, L4-5, without instrumentation ("hardware"), performed by Dr. Todd Chapman. When plaintiff returned to work in July 1990, she had numerous restrictions — no lifting, no prolonged standing, no prolonged sitting. For the first time she no longer was able to perform any direct patient care.
7. Subsequent to her return to work for CMC, plaintiff continued treatment with Dr. Chapman. On October 3, 1990, Dr. Chapman noted that x-rays of the plaintiff's spine showed good solid fusion at the L3-L4 and L4-L5 levels. On March 8, 1991, Dr. Chapman (who had not examined plaintiff prior to 1990) rated plaintiff with a 20 percent permanent partial disability of her spine. However, Dr. Chapman attributed a 10 percent permanent partial disability rating to plaintiff's pre-existing condition and 10 percent of the permanent partial disability to the injury by accident of September 18, 1989 and resulting surgery. Dr. Chapman attributed the pre-existing 10 percent permanent partial disability to a L3-L4 partial diskectomy in 1981, and to a discography and MRI January, 1990, which revealed degenerative changes at the L3-L4 and L4-L5 levels.
8. On April 3, 1991, Dr. Chapman opined that plaintiff had reached maximum medical improvement and released her with the permanent partial disability rating described above.
9. Meanwhile on February 18, 1991, plaintiff left her employment with Carolinas Medical Center, and though still wearing a back brace and working under restrictions, began with Gaston Memorial Hospital as a nurse manager. Between February 18 and April 26, 1991 plaintiff had normal post operative pain for which she took Tylox, Tylenol and Darvocet. She had a round trip drive of 100 to 120 minutes to work, and prepared supper for her family. Pain affected her sleep. On April 26, 1991 while at work, plaintiff slipped on a recently mopped landing on GMH's premises, and rolled and tumbled down several steps, landing on her left buttock. She was examined and released at the emergency room of Gaston Memorial Hospital. She returned to see Dr. Chapman's physician assistant May 9, 1991. It was noted that plaintiff had a decreased range of motion secondary to low back pain and diffuse tenderness in the lower lumbar spine. Additionally, a straight leg raising test in the sitting position increased plaintiff's back pain on the right side. Plaintiff continued working at GMH until September 1991. She continued treatment with Dr. Chapman and on September 9, 1991 Dr. Chapman performed a L3-L4, L4-L5, and L5-S1 bilateral decompression followed by a fusion of the L3 to L5 levels using pedicle screws and Moss instrumentation (unlike the March 30, 1990 fusion) and a right iliac crest bone graft.
10. Plaintiff returned to work for Gaston Memorial Hospital on January 22, 1992, with restrictions similar to those imposed after her 1990 surgery. On September 30, 1992 Dr. Chapman again indicated that plaintiff had reached maximum medical improvement, and rated her with an additional five percent permanent partial impairment of the back. He explained that the additional five percent is the result of the second surgery (posterior fusion with instrumentation) and the pain therefrom.
11. After her second fusion, plaintiff was left with very severe lifting and sitting restrictions. Dr. Chapman reported in his January 21, 1992 note that after completing the prescribed physical therapy, Ms. Brown still had left back, buttock and leg pain. Even though her fusion was solid, she had extremely tight hamstrings and leg pain so severe that she had problems sitting for very long.
12. In April 1992, Ms. Brown told Dr. Chapman that back pain spasms were preventing her from staying up at night past 9 or 10 o'clock. In September 1992, one year after the second fusion, the office notes reflect that by 6 p.m. plaintiff's back pain starts increasing and by 8 p.m., she is in bed because getting off her feet is the only way she can obtain pain relief.
13. Plaintiff still has a good deal of pain currently. She has continued working at GMH and has lost no time from work since January 1992.
14. Dr. David N. DuPuy, an orthopedic surgeon, reviewed plaintiff's medical file and x-rays for a second opinion and prepared such opinion on May 26, 1992. On the date of his deposition, December 14, 1992, Dr. DuPuy personally evaluated plaintiff prior to his testimony.
15. The principal factual issues in dispute are the degree of disability of plaintiff's back, the causes of such disability, and how the percentages thereof are to be allocated. Resolution of such dispute depends in part upon the weight to be accorded the respective opinions of Dr. Chapman and Dr. DuPuy, to whom plaintiff was referred for a second opinion. In contrast to Dr. Chapman's most recent 25 percent disability rating, allocating 10 percent to plaintiff's pre-existing conditions, 10 percent to the injury by accident of September 18, 1989, while plaintiff was employed by CMC, and an additional five percent attributable to the fall on April 26, 1991, Dr. DuPuy believed that plaintiff had a 20 percent permanent partial disability of the back as of April 3, 1991, of which five percent was attributable to the 1981 laminectomy. Dr. DuPuy did not believe the second surgery increased the degree of plaintiff's back disability because the second fusion surgery succeeded in solidifying what had been a pseudoarthrosis (non-union following fusion surgery).
16. The flaws in Dr. Chapman's opinion as to the additional five percent disability that he felt was attributable to the fall at GMH on April 26, 1991 and the second fusion in September 1991 are as follows: It was recognized and plaintiff was informed on March 29, 1990, before the first fusion surgery, that there was a risk in a two-level fusion that the bones would not grow together (Chapman Dep. Tr. 6, 7). The pseudoarthrosis or non-union was first noted in Dr. Chapman's office notes and in x-rays April 3, 1991. Contrary to Dr. Chapman's assertion of August 26, 1991 (Chapman Dep. Exh. 2), that the April 26, 1991 fall converted a "relatively painless pseudoarthrosis into a painful pseudoarthrosis", plaintiff was experiencing low back aching and instability and loss of sleep before she began work at GMH, which continued between February 18 and April 26, 1991; and she was taking pain medications before the fall. X-rays after the April 26 fall were unchanged by the fall. Dr. Chapman's May 9, 1991 records and GMH's employee health records reveal that plaintiff's low back pain was only slightly, or a little bit, worse after the fall. Finally, at least 50 percent and possibly 60 percent of patients with a pseudoarthrosis end up having a repeat fusion.
17. The second fusion surgery was a direct and natural consequence of the ultimately unsuccessful first fusion surgery, which was made necessary by plaintiff's compensable accident of September 18, 1989, and was not a result of her fall at GMH on April 26, 1991. Plaintiff retains a 20 percent permanent partial disability of the spine due to her injury of September 18, 1989. No additional permanent disability was occasioned by the second fusion surgery.
18. As a further result of her compensable accident of September 18, 1989 and of the resulting second fusion surgery, plaintiff was unable to earn wages in any employment between September 9, 1991 and January 21, 1992, a period of 19 and one-sevenths weeks.
19. In view of the differing interpretations of applicable law, differences in expert opinions as described, and the need for determining the liability of two different employers, there was reasonable grounds for defendant CMC to refuse to pay compensation for a 20 percent permanent partial disability of the spine pending a determination of all issues by the Industrial Commission after hearing. There was no error by the Deputy Commissioner in his determination and the Full Commission find likewise.
* * * * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Leaving aside the issue of whether the second fusion surgery caused an increase of five percent in plaintiff's permanent partial disability of the back — and the undersigned has found it did not — both Dr. Chapman and Dr. DuPuy agree that plaintiff has a 20 percent permanent partial disability. Under North Carolina law, the employer (in this case, CMC) is responsible for the entire disability resulting from the compensable injury by accident of September 18, 1989 without regard to plaintiff's pre-existing condition or conditions, where those conditions are non-occupational in origin and are not incapacitating. Morrison v. Burlington Industries, 304 N.C. 1,18(1981); Wilder v. Barbour Boat Works, 84 N.C. App. 188 (1987);Pruitt v. Knight Publishing Co., 27 N.C. App. 254 (1975) rev'd other grounds, 289 N.C. 254 (1976). (The passage quoted in contentions by defendant CMC from Morrison relates to apportionment of disability from an occupational disease as part (4) of the Court's summary of the principles involved in the case. The language in part (2), paraphrased above, specifies an accidental injury, whereas part (4) does not.)
2. As a result of her compensable injury by accident of September 18, 1989, during her employment at CMC, plaintiff retains a 20 percent permanent partial disability of her back and is entitled to compensation at a rate of $376.00 per week for 60 weeks. (G.S. 97-31 (23)).
3. As a further result of her compensable injury by accident, plaintiff is entitled to compensation for temporary total disability from September 9, 1991 to January 21, 1992, a period of 19 and one-sevenths weeks. (G.S. 97-29). The period of 60 weeks for which compensation is payable due to a 20 percent permanent partial disability of plaintiff's back began April 3, 1991 and extended through May 29, 1992. Inasmuch as this period overlaps the period of temporary total disability which occurred from September 9, 1991 to January 21, 1992, when plaintiff could not work because she was recovering from the second fusion surgery, the lump sum awarded below for a total of 79 and one-sevenths weeks will be deemed to consist of payments under G.S. 97-31 (23) from April 3, 1991 through September 9, 1991; payments under G.S. 97-29 through January 21, 1992; and the remaining payments under G.S. 97-31 (23) up to the 60 weeks allowed, thereafter.
4. As a further result of her compensable injury of September 18, 1989, plaintiff is entitled to the benefits of G.S.97-25.
5. Plaintiff is not entitled to attorney's fees under G.S. 97-88.1.
6. Plaintiff was involved in an injury by accident arising out of and in the course of her employment with defendant Gaston Memorial Hospital on April 26, 1991, G.S. 97-2 (6), but the compensable consequences thereof, including the treatment by Dr. Chapman, the ensuing surgery, and the temporary total disability from September 9, 1991 to January 21, 1992 relate back to the injury of September 18, 1989, while plaintiff was employed by Carolinas Medical Center.
* * * * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff's motion for attorney's fees under G.S. 97-88.1
is DENIED.
2. In Case No. 156284, involving defendant Gaston Memorial Hospital, plaintiff's claim is DENIED.
3. Subject to the attorney's fee awarded below, Defendant Carolinas Medical Center shall pay to plaintiff in a lump sum, $29,757.71 representing a total of 79 and one-sevenths weeks at a rate of $376.00 per week.
4. Defendant Carolinas Medical Center shall pay the expenses of medical treatment resulting from plaintiff's injury of September 18, 1989 when bills for same have been submitted through the servicing agent to the Industrial Commission for approval, and approved by the Commission.
5. A reasonable attorney's fee of $7,439.43 is approved for plaintiff's counsel, which shall be deducted from the lump sum awarded above and paid directly to Ms. Leon.
6. Defendant Carolinas Medical Center shall pay the costs, including a reimbursement to Gaston Memorial Hospital of any sums paid by Gaston Memorial Hospital for the costs and expert witness fees of the depositions of Drs. Chapman and DuPuy.
IT IS FURTHERMORE ORDERED that this case be REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1994.
 S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________________ JAMES J. BOOKER COMMISSIONER
S/ _______________________ W. JOEY BARNES DEPUTY COMMISSIONER
JHB/nwm 11/17/94