The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings. Therefore, upon reversal and remand from the Court of Appeals, the Full Commission enters the following Opinion and Award in accordance with the Opinion filed by the Court of Appeals on December 19, 2000.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the initial hearing before the Deputy Commissioner as
 STIPULATIONS
1. Plaintiffs date of injury is October 20, 1995.
2. On that date, the parties were subject to, and bound by, the provisions of the North Carolina Workers Compensation Act.
3. On that date, an employee-employer relationship existed between plaintiff and defendant-employer.
4. St. Paul Fire Marine Insurance Company (hereinafter defendant-carrier) was the carrier on the risk.
5. Plaintiffs average weekly wage is to be determined.
6. The parties stipulated into evidence the following: the Form 19, the Form 60, the Form 24 (withdrawn), the Form 28B, the Form 33, the Form 33R, the Order of Removal filed August 20, 1996, the Compromise Settlement Agreement approved September 5, 1996, and the Order of Withdrawal of Counsel for Defendants filed February 4, 1997.
 ***********
Based upon the evidence of record and in accordance with the Opinion filed by the Court of Appeals on December 19, 2000, the Full Commission vacates its previous findings of fact and finds as follows
 FINDINGS OF FACT
1. Plaintiff, who has a high school education, was 34-years old at the time of the initial hearing before the Deputy Commissioner. He had been employed with defendant-employer nine months on October 20, 1995. On that date, plaintiff suffered an injury by accident arising out of and in the course and scope of his employment when he jumped from a roller that he thought was going to turn over. When plaintiff landed on the ground, he fractured his right tibia.
2. Immediately following the accident, plaintiff was seen at Wake Medical Center.
On October 26, 1995, plaintiff underwent an open reduction and internal fixation of the right tibial plateau fracture and application of Hybrid external fixation with allograft in the right proximal tibia. Douglas Dirschl, M.D., was plaintiffs treating physician.
3. On January 1, 1996, plaintiff underwent a second operation whereby the external fixator was removed, and Dr. Dirschl examined plaintiffs right tibia. Plaintiffs leg was found to be entirely stable and excellently healed. Plaintiff underwent extensive physical therapy.
4. Plaintiff was released from treatment by Dr. Dirschl in June of 1996. Dr. Dirschl rated plaintiff with a forty percent permanent partial impairment of the right leg. Plaintiff was also placed under permanent work restrictions including no lifting greater than thirty pounds; no standing longer than thirty minutes at a time or an aggregate total of four hours per working day; no climbing, stooping or crawling; no squatting; and no carrying objects greater than ten pounds.
5. On October 24, 1995, plaintiffs case was referred to Debbie Rogers at Resource Opportunities, Inc. to coordinate plaintiffs medical care. Following plaintiffs release from Dr. Dirschl, Ms. Rogers began coordinating return-to-work efforts for plaintiff as well.
6. After receiving work restrictions from Dr. Dirschl, Ms. Rogers observed the jobs of roller and paver at defendant-employer. Following the recommendations of Dr. Dirschl, modifications to the job requirements were made. Dr. Dirschl then approved these jobs for plaintiff in July of 1996 when they were offered to plaintiff.
7. After plaintiff refused defendant-employers job offer, settlement discussions occurred and, on August 12, 1996, plaintiff signed the agreement in the amount of $30,000.00, which was approved by the Commission on September 5, 1996. Defendants continued paying temporary total disability benefits to plaintiff until two days after the agreement was approved.
8. However, at the time that the compromise settlement agreement packet was submitted and reviewed, the rehabilitation reports from April 19, 1996, June 13, 1996 and July 15, 1996 were omitted from the settlement agreement packet.
9. Approximately three months after the agreement was approved by the Commission, plaintiff retained counsel and filed a Form 33 asking that the agreement be set aside on the grounds that it was improvidently granted. Plaintiff, through counsel, also requested a Form 22 from defendant-employer that established an average weekly wage of $402.06 and a resulting compensation rate of $268.05, which was less than the $500.50 figure upon which compensation benefits had been calculated and paid pursuant to the Form 60 and the settlement agreement. Accordingly, plaintiff has received an overpayment.
10. The unambiguous language of N.C. Gen. Stat. 97-17 prohibits all parties to any agreement for compensation, when approved by the Commission, to deny the truth of all matters therein set forth unless it is made to appear to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake. There is no competent, credible or convincing evidence in this record that there was any fraud, misrepresentation, undue influence or mutual mistake of fact at the time the agreement was entered into by the parties.
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On October 20, 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer. N.C. Gen. Stat. 97-2(6).
2. Plaintiff is not entitled to set aside the compromise settlement agreement approved by the Commission on September 5, 1996, on the grounds that the agreement was entered into due to fraud, misrepresentation, undue influence or mutual mistake as the evidence of record fails to demonstrate any of these grounds. N.C. Gen. Stat. 97-17 and Pruitt v.Publishing Co., 289 N.C. 254, 221 S.E.2d 355 (1975).
3. However, because of the omission of the rehabilitation reports from the settlement agreement packet, the agreement was not properly before the Commission and the Commission had no authority to approve the agreement. Therefore, the agreement is voidable by plaintiff. N.C. Gen. Stat. 97-82 and Rule 502 of the North Carolina Industrial Commission Rules.
4. Plaintiffs average weekly wage is $402.06 resulting in a compensation rate of $268.05. Since plaintiff has received an overpayment based on payment at a higher compensation rate and the lump sum compromise settlement agreement proceeds, defendants are entitled to a credit. N.C. Gen. Stat. 97-2(5) and 97-42.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following
 ORDER
1. This case is hereby Remanded to a Deputy Commissioner for a full evidentiary hearing regarding the issues of justified refusal of suitable employment and the amount of defendants credit in light of overpayments unless the parties are able to reach an agreement on these issues.
2. Defendants shall pay the costs due the Commission.
This the ____day of February 2001.
 S/_________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_________________ THOMAS J. BOLCH COMMISSIONER