Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner. Further, it is noted that plaintiff, appearing pro se, primarily focused his arguments before the Full Commission on the issue of his wrongful discharge from his employment with defendant-employer. As the Industrial Commission lacks jurisdiction to address this issue, the undersigned have limited their review to the issue of plaintiffs eligibility for further compensation for his work-related occupational disease.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Harleysville Insurance Company was the carrier on the risk.
In addition, the parties stipulated into evidence before the Deputy Commissioner the following:
 1. Final Compromise Settlement Agreement and Release dated 27 September 1999.
 2. To the extent that they related to treatment before 21 October 1999, medical bills marked by plaintiff and marked as Stipulated Exhibit # 1. (Defendants position is that the medical bills had not been paid because they had not been submitted before the date of hearing).
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 54 years old at the time of the hearing before the Deputy Commissioner, was employed by defendant-employer for almost ten years until 22 May 1996. He was a fixer at the textile mill which processed finished cotton and synthetic materials. By the end of his period of employment, he developed breathing problems and he filed a claim against defendants alleging that his lung condition constituted an occupational disease under the terms of the Workers Compensation Act. Defendants denied liability for the claim.
2. During the time in question, plaintiff was represented by Kara F. Schrum, an attorney licensed to practice in North Carolina. She handled all negotiations with defendants at the mediation and otherwise.
3. The case was set for hearing and on the eve of trial defendants made an offer of settlement which, based upon issues uncovered in discovery, Ms. Schrum believed was fair and in the best interest of plaintiff to accept. Consequently, she called him and discussed the offer with him. Plaintiff questioned the amount offered and she explained to him and his wife the reasons she thought he should accept the terms. After several telephone conversations with his attorney, plaintiff decided to accept the settlement offer, so the agreement was drafted and mailed to him for his signature. Plaintiff lived in Rockingham while his attorneys office was in Spartanburg, South Carolina.
4. Plaintiff signed the compromise settlement agreement without reading it and sent it back to Ms. Schrums office. The agreement was then signed on behalf of defendants and the attorneys in the case and was sent to the Industrial Commission. Deputy Commissioner Glenn approved the agreement by Order filed 10 November 1999. Defendants paid the compensation awarded but did not pay the medical bills because the bills were not submitted to them for payment until the hearing before the Deputy Commissioner on 18 August 2000. The settlement agreement provided for payment of $37,500.00 plus payment of unpaid medical expenses in the amount of $3,273.23.
5. Plaintiff subsequently decided that the settlement was not appropriate and he requested a hearing in order to have the agreement set aside. He regretted signing the agreement because he thought that he was permanently disabled, he was suspicious regarding the circumstances of his termination by his employer, he thought that he had not understood the situation adequately and he believed he had felt compelled to sign the agreement because of his financial circumstances. He now believes that he deserves more money.
6. However, plaintiff admitted that, prior execution of the agreement, he had not had any contact with defendants except at the mediation and he did not discuss the case directly with them at the mediation. There was no evidence of fraud, misrepresentation or undue influence on the part of defendants which could be construed to have led him to sign the agreement. Nor is there any evidence of a mutual mistake of fact. Plaintiff has simply changed his mind about whether he should settle for the terms previously agreed upon.
7. The compromise settlement agreement approved in this case was not entered into as the result of fraud, misrepresentation, undue influence or mutual mistake. Rather, as stated in the order of approval, the agreement was fair, equitable and reasonably appears to be in the best interests of the parties.
8. As of the date of hearing before Deputy Commissioner Chapman, the medical expenses due under the terms of the agreement had not been paid. However, counsel for defendants have advised the undersigned that the bills have now been paid.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. A settlement agreement which has been approved by the Industrial Commission is as binding on the parties as an unappealed award of the Commission, and it cannot be set aside unless there was an error due to fraud, misrepresentation, undue influence or mutual mistake. N.C. Gen. Stat. 97-17; Pruitt v. Knight Publishing Company, 289 N.C. 254,221 S.E.2d 355 (1976).
2. In that plaintiff has not proven that the settlement agreement approved by the Industrial Commission in his case was entered into as the result of fraud, misrepresentation, undue influence or mutual mistake, he is not entitled to have the agreement set aside. N.C. Gen. Stat. 97-17;Pruitt v. Knight Publishing Company, 289 N.C. 254, 221 S.E.2d 355
(1976).
3. Plaintiff is entitled to have the medical expenses due under the terms of the agreement paid by defendants. N.C. Gen. Stat. 97-2(19); 97-25;97-17.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiffs motion to set aside the compromise settlement agreement approved in this case must, under the law, be and it is hereby DENIED.
2. Each side shall pay its own costs.
This the day of May, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER