***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On April 15, 2000 an employment relationship existed between the plaintiff-employee and the defendant-employer.
3. On April 15, 2000 Hanover Insurance Company was the carrier at risk.
4. Plaintiff's average weekly wage per defendants' Pre-Trial agreement is estimated at $425.00 per week.
5. Defendants' exhibits 1-6 are admitted into evidence.
6. The Full Commission takes Judicial Notice of Industrial Commission Forms 18, 33 33R and Tracey Weaver's March 8, 2001 Order allowing William Acton to withdraw as plaintiff's counsel.
7. The issue to be determined by the Commission is whether the Order Approving the Compromise Settlement Agreement between the parties, filed January 24, 2001, should be set aside.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of the deputy commissioner hearing in this matter, plaintiff was fifty-one (51) years old. Plaintiff holds an A.A.S. degree form Rutledge College of Business and attended Campbell University for three years. Plaintiff was formerly employed by defendant-employer as a truck driver.
2. Plaintiff initially employed attorney William D. Acton, Jr. to represent him in his worker's compensation claim against defendant-employer. Mr. Acton is licensed to practice law in North Carolina and a certified specialist in workers' compensation.
3. Plaintiff alleged he injured his neck and shoulder on or about April 15, 2000. Defendant-employer denied plaintiff's claim and the case was ordered into Mediation pursuant to Industrial Commission procedure.
4. Prior to mediation, Mr. Acton discussed the value of the case with plaintiff. Since plaintiff's treating physician had released plaintiff around June 2000 and plaintiff was in an automobile accident subsequent to this, Mr. Acton advised plaintiff there would be causation problems tying his current difficulties to the alleged accident at work. Mr. Acton recommended plaintiff consider a settlement in the range of $3,300.00 to $5,000.00.
5. On December 10, 2000, the parties participated in mediation with Henry Byrum serving as mediator. At no time before or during the mediation did plaintiff indicate that he did not understand or that he was under the influence of medication. Plaintiff participated in the mediation and the parties engaged in negotiations which ultimately resulted in an agreement to settle the case for $4,000.00.
6. At the conclusion of the mediation, the parties executed a memorandum of settlement which stated that plaintiff agreed to settle his claim for $4,000.00 "in full and final settlement of all claims." Plaintiff, plaintiff's counsel, and defendants' counsel signed this agreement. At no time did plaintiff indicate that he did not understand the settlement or that he was reluctant to enter into the agreement. Plaintiff, at all times during the mediation appeared to understand what was going on and did not appear drowsy, drugged, or otherwise under the influence of medication.
7. Upon receipt of the Agreement for Final Compromise Settlement and Release, plaintiff went to Mr. Acton's office. Mr. Acton went through each paragraph of the Agreement with plaintiff. The Agreement clearly stated the settlement was for $4,000.00. Plaintiff signed the agreement. Mr. Acton provided plaintiff with a copy of the Agreement. At no point did plaintiff advise Mr. Acton that he was incapable of understanding the content or meaning of the Settlement Agreement due to medications he was taking.
8. The Agreement was submitted to the Industrial Commission for approval per procedure. Former Special Deputy Commissioner Gina Cammarano reviewed the Agreement, plaintiff's file and medical records, and approved the Agreement by Order filed January 24, 2001. By Order, plaintiff was to receive $3,000.00 and Mr. Acton was to receive $1,000.00 for attorney fees.
9. When Mr. Acton received notice that the Compromise Settlement Agreement was approved and communicated this to plaintiff, plaintiff informed Mr. Acton that he thought he was to receive $4,000.00 per month. On January 30, 2001, plaintiff met with his counsel and Mr. Acton reviewed with him his case and the law regarding setting aside a compromise settlement agreement. Mr. Acton informed plaintiff he saw no basis to motion the Industrial Commission to set aside the agreement. Mr. Acton left plaintiff alone and plaintiff hand wrote the following:
 "I John W. Gaither was misrepresention on the agreement of this case." Mr. Gaither signed the paper and dated it January 30, 2001.
10. Mr. Acton submitted Mr. Gaither's one page note to Former Special Deputy Commissioner Gina Cammarano and asked she treat it as plaintiff's Motion to Set Aside the Agreement.
11. On February 19, 2001, plaintiff completed a From 33 Request That Claim Be Assigned for Hearing that was filed with the Industrial Commission on March 6, 2001. In his request for hearing, plaintiff asked for payment for days missed from work, medical expenses, permanent partial disability, permanent and total disability, and payment for scars. Plaintiff also alleged Mr. Acton misrepresented the amount plaintiff would receive pursuant to the compromise settlement agreement.
12. A settlement check arrived for plaintiff at Mr. Acton's office on March 8, 2001. Mr. Acton informed plaintiff the checks had arrived and they would remain in his trust account. Mr. Acton informed plaintiff that if he wished to resolve the matter without further litigation, plaintiff could receive his check. On March 12, 2001 plaintiff went to Mr. Acton's office and picked up his check for $3,000.00. As plaintiff was leaving he told Mr. Acton "Just remember you are your brother's keeper, later."
13. Plaintiff cashed the settlement check for $3,000.00 on or around March 13, 2001. By letter dated April 5, 2001 which was received at the Industrial Commission on April 9, 2001, plaintiff alleged a conspiracy between his former counsel and defendants' counsel to defraud plaintiff. Plaintiff also indicated the Compromise Settlement Agreement was void because of this "conspiracy." Mr. Acton was allowed to withdraw from representing plaintiff in this matter by Order filed on March 8, 2001 by Executive Secretary Tracey Weaver.
14. The greater weight of the competent evidence shows that plaintiff's Agreement for Final Compromise Settlement and Release was not procured by fraud, misrepresentation, or undue influence of the defendant or defendants' counsel or by plaintiff's former counsel. The settlement was not based on a mutual mistake involving either of the defendants, their representatives, or plaintiff's former counsel.
15. The greater weight of the competent evidence provides that plaintiff fully understood what he was agreeing to and even cashed the check to get the money after he had filed documents with the Industrial Commission saying the Agreement was void.
16. There is no competent, credible evidence that plaintiff's former counsel or defendants' counsel conspired to defraud plaintiff of anything. In fact, the greater weight of the evidence is that Mr. Acton was able to procure a higher amount at mediation than plaintiff would have been entitled if he had been successful at hearing. At best, plaintiff could receive approximately eight weeks of temporary total disability benefits, yielding around $2,400.00 to $2,500.00 given plaintiff's projected compensation rate. Plaintiff had no permanent disability rating assigned as a result of the alleged accident, and he received injuries in an automobile accident following his release from the physician.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
A settlement agreement which has been approved by the Industrial Commission, is binding on the parties as an unappealed award of the Commission, and it cannot be set aside unless there was an error due to fraud, misrepresentation, undue influence or mutual mistake. The Full Commission is not satisfied that there has been error due to fraud, misrepresentation, undue influence or mutual mistake in entering into the Agreement for Final Compromise Settlement and Release, approved by the Industrial Commission on January 24, 2001, which would warrant setting aside the agreement; therefore, the parties are bound by their agreement. N.C.G.S. § 97-17 and Pruitt v. Knight PublishingCompany, 289 N.C. 254, 221 S.E.2d 355 (1976).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's motion to set aside the Order Approving the Compromise Settlement Agreement approved January 24, 2001 pursuant to N.C.G.S. § 97-17 must be and is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of August 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER