***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties prior to the hearing in a Pre-Trial Agreement and at the hearing as
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The date of the alleged injury by accident is September 14, 1998.
4. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer-employee relationship between the parties with defendant — employer self-insured with Palmer Cay, TPA.
5. Plaintiff's average weekly wage was $511.41.
6. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of documents including the following: employment records, medical records, Industrial Commission file, copied on February 21, 2002, additional Industrial Commission filings, and plaintiff's Answers to Defendant's First Set of Interrogatories.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the injury giving rise to this claim, plaintiff was employed by defendant-employer as a route delivery person.
2. On September 14, 1998, plaintiff sustained a compensable work-related injury to his back, which was disabling.
3. Following his injury, plaintiff treated briefly with Dr. Oudeh by whom he was treated conservatively. Thereafter, plaintiff's treatment was transferred to Dr. Robert Allen by whom plaintiff had been treated previously.
4. On October 23, 1998, plaintiff underwent back surgery performed by Dr. Allen. Thereafter, he completed a physical therapy program and a work-hardening program.
5. Following completion of these programs, on March 10, 1999, Dr. Allen was of the opinion that plaintiff had reached maximum medical improvement and assigned a 10% permanent partial disability of the spine. He then released plaintiff to return to work.
6. On March 11, 1999, plaintiff returned to work for defendant-employer in bread delivery sales. Upon plaintiff's return to work, he had difficulty performing his job duties and experienced leg and lower back pain. On June 1, 1999, plaintiff resigned his position with defendant-employer due primarily to pain.
7. Thereafter, the parties entered into an Agreement for Compromise Settlement and Release which provided that plaintiff would receive $11,251.35, an amount that included approximately 10% above plaintiff's 10% rating.
8. Plaintiff was not represented at the time he entered into this agreement. However, plaintiff had had a prior workers' compensation claim in which he was represented by counsel and had also settled that matter.
9. The language of the agreement which plaintiff signed indicated that plaintiff had returned to work and continued to be working. While this information was not technically correct, plaintiff could have read this as it was clearly stated in the agreement. Furthermore, a letter to plaintiff from defense counsel forwarding the agreement indicated that plaintiff could call her if he should have any questions regarding the agreement.
10. The agreement was submitted to the Industrial Commission for review. Special Deputy Commissioner James C. Gillen approved the agreement on July 15, 1999. Special Deputy Commissioner Gillen did not have independent information which would have informed him that plaintiff had not indeed returned to work. However, though Special Deputy Commissioner Gillen had no independent recollection of this claim, it was his policy to contact all pro se plaintiffs and discuss the terms of the clincher with them including the fact that it was a final release of all claims.
11. Special Deputy Gillen approved the Compromise Settlement and Release on July 15, 1999. Plaintiff received full payment pursuant to that agreement.
12. In excess of two years following the approval of the agreement and plaintiff's receipt of payment, plaintiff filed a Motion to Set Aside the Clincher Agreement on the basis of fraud, misrepresentation, mutual mistake and unfairness.
13. Following the approval of the Agreement for Final Compromise Settlement and Release on July 15, 1999, plaintiff did not see another medical provider until June 27, 2000, approximately one year later, when he presented to Dr. Grubb on the recommendation of his attorney. During the course of plaintiff's treatment with Dr. Grubb, Dr. Grubb noted that plaintiff's workers' compensation claim had been "settled".
14. Plaintiff ultimately underwent back surgery performed by Dr. Grubb on September 18, 2000.
15. Plaintiff of his own free will entered into an agreement with defendant-employer in which he would receive $11,251.35 in settlement of his workers' compensation claim and accepted payment for it.
16. The settlement agreement entered into willingly by plaintiff with defendant-employer was not the result of fraud, misrepresentation, undue influence or abuse of confidential relationship, mistake by either or both parties.
17. A review of the medical evidence filed with the agreement at the time it was originally submitted to the Commission and the medical evidence before the undersigned shows that the Agreement was fair and just at the time it was approved on July 15, 1999 and it is reasonable to conclude that plaintiff willingly entered into that agreement in order to obtain the benefit of immediate payment.
 ***********
Based on the foregoing findings of fact the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The settlement agreement entered into willingly by plaintiff with defendant-employer was not the result of fraud, misrepresentation, undue influence or abuse of confidential relationship, mistake by either or both parties. N.C. Gen. Stat. § 97-17; Pruitt v. Knight PublishingCompany, 289 N.C. 254 (1976).
2. A review of the medical evidence filed with the agreement at the time it was originally submitted to the Commission and the medical evidence before the undersigned shows that the Agreement was fair and just at the time it was approved on July 15, 1999 and it is reasonable to conclude that plaintiff willingly entered into that agreement in order to obtain the benefit of immediate payment. N.C. Gen. Stat. § 97-17;Pruitt v. Knight Publishing Company, 289 N.C. 254 (1976).
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law the Full Commission enters the following:
 ORDER
1. Under the law, the plaintiff's Motion to Set Aside Agreement for Final Compromise and Release and Motion to Set Aside Order Approving Compromise Settlement Agreement should be and the same is hereby DENIED.
2. Each side shall bear its own costs.
This the 28th day of May 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER