***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff and defendant-employer were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on October 18, 2000. Transcontinental *Page 2 
Insurance Company, which was part of the CNA Insurance Group was the workers' compensation carrier for defendant-employer on that date.
2. Defendants admitted the compensability of the incident giving rise to this claim and plaintiff's right to compensation pursuant to an Industrial Commission Form 60 dated November 15, 2000.
3. On all relevant dates, plaintiff's average weekly wage was $460.00, yielding a compensation rate of $306.68.
4. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted a packet of various documents, which contained Industrial Commission Forms, Miscellaneous Documents, Medical Records, Discovery Responses and Social Security Disability Documents. This was admitted into the record, and marked as Stipulated Exhibit (2).
5. The issues to be determined are as follows:
 a. Whether the previous Compromise Settlement Agreement entered into in this matter was fair and just to plaintiff and should have been approved;
 b. Whether plaintiff's claim is barred by the doctrine of accord and satisfaction;
 c. Whether plaintiff's claim is barred by plaintiff's failure to make a timely appeal from the Order Approving the Compromise Settlement Agreement;
 d. Whether plaintiff's claim is barred by the doctrine of laches or equitable estoppel; and
 e. If the Compromise Settlement Agreement is set aside, to what compensation is plaintiff entitled.
 *********** *Page 3 
Based upon the competent evidence of record herein, the Full Commission makes the following: FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-two years of age. Plaintiff is a high school graduate. Plaintiff's employment history includes working at a grocery store bagging groceries, at Fruit of The Loom as a sock boarder and at a trucking company as a long-haul driver.
2. Plaintiff began his employment with defendant-employer in August 1995 in the "Red Iron" section, where his work involved the framing of buildings. In this capacity, plaintiff carried items weighing twenty to seventy pounds. The heaviest items were carried with a coworker. Plaintiff subsequently worked in the "Sheeting" section, where his work involved putting insulation and siding on the outsides of buildings. Ultimately, plaintiff returned to the "Red Iron" section.
3. On October 18, 2000, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. The incident occurred while plaintiff was a passenger in one of defendant-employer's trucks that was traveling to a job site when it was struck by an automobile that failed to stop at a stop sign. As a result of the collision, the work truck veered off the left side of the road into a dirt embankment and then rolled onto its left side.
4. Plaintiff reported experiencing little pain at the scene of the accident and was transported by ambulance to Montgomery Memorial Hospital. Plaintiff did report experiencing left arm pain to the ambulance attendants who noted that his back and neck were negative for any deformity. The attendants did observe several lacerations on plaintiff's left forearm and *Page 4 
elbow, but no bleeding. At the hospital, plaintiff was diagnosed as having sustained a left shoulder sprain, a lumbar strain and left forearm abrasions. Plaintiff was released from the emergency room on October 18, 2000.
5. On October 19, 2000, plaintiff sought additional treatment from Dr. Bo William Kopynec, his family physician. Dr. Kopynec noted that plaintiff was experiencing back pain and also diagnosed him as having myofacial pain syndrome. When Dr. Kopynec last examined plaintiff for the incident in question on November 6, 2000, objective findings were unremarkable.
6. Thereafter, on November 14, 2000, defendants referred plaintiff to Dr. Boyd Watts at Charlotte Orthopedic Specialists. During his course of treatment with Dr. Watts, plaintiff underwent an MRI of the lumbar spine, a lumbar CT, a lumbar myelogram and a post-myelogram CT scan. These diagnostic tests did not reveal any significant abnormalities; nonetheless, plaintiff continued to report severe back pain. Dr. Watts generally provided conservative treatment and opined that plaintiff was not a surgical candidate. On February 19, 2001, Dr. Watts recommended that plaintiff be evaluated for pain management due to his ongoing symptoms, but defendants did not authorize this treatment. On March 6, 2001, Dr. Watts noted that diagnostic tests had not revealed anything abnormal but that plaintiff continued to report pain symptoms.
7. Plaintiff underwent a functional capacity evaluation on June 26, 2001. The results of this evaluation indicated that plaintiff was able to work at the light to medium physical demand level for an eight-hour day; however, there were indications of submaximal effort and plaintiff exhibited symptom magnification. *Page 5 
8. On October 1, 2001, plaintiff entered into a compromise settlement agreement to resolve his workers' compensation claim. Plaintiff and his then legal counsel signed the agreement. The agreement provided that defendants were to pay $6,500 in a lump sum, together with all medical bills arising out of the October 18, 2000 accident incurred through the date of the agreement and no further, to the extent that such bills are approved by the Industrial Commission. At the time the signed compromise settlement agreement was submitted to the Industrial Commission, copies of all medical records of which defendants had knowledge or had in their possession were also submitted. The Full Commission finds that the compromise settlement agreement was in compliance with Rule 502 of the Rules of the Industrial Commission.
9. On November 19, 2001, former Special Deputy Commissioner Matthew D. Harbin filed an Order approving the compromise settlement agreement. The order recited that consideration had been given to all matters involved in the case in accordance with N.C. Gen. Stat. § 97-17 as amended June 2001, and that the Industrial Commission had found that the compromise settlement agreement is fair and just and in the best interests of all parties.
10. Defendants mailed two checks to plaintiff's former counsel on November 26, 2001: one for $1,625 payable to said counsel and the other for $4,875 payable to plaintiff. Those checks were received and negotiated. Plaintiff acknowledges that he received the $4,875 in settlement funds.
11. Subsequent to the settlement of his claim, but before the settlement of his third party tortfeasor claim, plaintiff terminated his relationship with his former counsel and hired his current counsel. Plaintiff's new counsel then filed a third party lawsuit on approximately April 7, 2003. Plaintiff later settled his third party tortfeasor claim for $48,000 on March 10, 2004. *Page 6 
12. Defendant-carrier paid a total of $39,021.48 in workers' compensation benefits, and accordingly its workers' compensation lien was $39,021.48. However, defendant-carrier agreed to accept one-third of its lien, or $13,007.16, in full and final satisfaction of its workers' compensation lien.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. A settlement agreement which has been approved by the Industrial Commission is as binding on the parties as an unappealed award of the Commission, and it cannot be set aside unless there was an error due to fraud, misrepresentation, undue influence or mutual mistake. N.C. Gen. Stat. § 97-17; Pruitt v. Knight Publishing Company, 289 N.C. 254 (1976). In the present case, since there was no evidence of fraud, misrepresentation, undue influence or mutual mistake, the parties are bound by the compromise settlement agreement that the Industrial Commission approved.
2. Section (3) of Rule 502 of the Workers' Compensation Rules of the North Carolina Industrial Commission requires that ". . . [a]ll medical, vocational, and rehabilitation reports known to exist including but not limited to those pertinent to the employee's future earning capacity, must be submitted with the agreement to the Industrial Commission by the employer, the carrier/administrator, or the attorney for the employer." There is no evidence that the Industrial Commission was missing documents statutorily required for the approval of the Compromise Settlement Agreement and thus the Industrial Commission lacks authority to set it aside. N.C. Gen. Stat. § 97-92 (2003); Workers' Compensation Rule 502. *Page 7 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for further workers' compensation benefits must be and is hereby denied.
2. Each side shall pay its own costs.
This the ___ day of July 2007.
S/________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________________ DANNY LEE McDONALD COMMISSIONER *Page 1