CULLEN WALSTON, EMPLOYEE, PLAINTIFF v. BURLINGTON
INDUSTRIES, EMPLOYER, AND LIBERTY MUTUAL INSURANCE
COMPANY, CARRIER, DEFENDANTS

No. 8010IC240

(Filed 30 October 1980)

1. **Master and Servant § 96.5– workers' compensation – finding supported by evidence**

 In an action to recover disability benefits for an occupational disease allegedly contracted by plaintiff as a result of his exposure to cotton dust during the course of his employment with defendant, evidence was sufficient to support the Industrial Commission's finding that plaintiff suffered from pulmonary emphysema and chronic bronchitis where the evidence tended to show that plaintiff's breathing problems began after he had been both working in defendant's cloth room from eight to ten years and smoking at least one-half pack of cigarettes a day for some twenty-six years.

2. **Master and Servant § 68– workers' compensation – onset of disabling condition hastened by work place irritants – causation of disability**

   Where an employee is exposed in his work place to environmental irritants which in fact hasten the onset of a disabling condition which did not previously exist, such aggravation is tantamount to causation for purposes of G.S. 97-53(13), and the resulting disability is an "occupational disease" thereunder. The Industrial Commission erred in making no findings with respect to the extent to which plaintiff's exposure to cotton dust contributed to the onset of his disabling disease.

APPEAL by plaintiff from Opinion and Award of the North Carolina Industrial Commission filed 21 September 1979. Heard in the Court of Appeals 11 September 1980.

Plaintiff in this case contends that he contracted an occupational disease as a result of his exposure to cotton dust during the course of his employment with defendant, that he became totally disabled as a result of such disease, and that he is due compensation for his disability pursuant to G.S. 97-53(13).

Commissioner Robert S. Brown conducted hearings on 25 and 26 July 1977. Plaintiff testified that he began working for defendant on 2 February 1942 and remained continuously in defendant's employ until his retirement on 17 March 1972 due to breathing problems. For the first fifteen or sixteen years of his employment, plaintiff operated a stitching machine in the cloth-finishing department in defendant's plant. Plaintiff testified that he was continually exposed to thick cotton dust in the air as a result of the brushing and stitching operations of the machine and his duties of blowing off and sweeping the accumulated dust from the walls and floors in his work area. In or about 1952, plaintiff began experiencing difficulty breathing upon exertion at work. Because of his breathing problems, plaintiff transferred to a less strenuous job in 1958. Plaintiff was examined at North Carolina Memorial Hospital in Chapel Hill where he was told that he had emphysema and bronchitis. Plaintiff was also examined and treated at Duke University Medical Center. Plaintiff, age 66 on the date of the hearing, has smoked cigarettes since he was fourteen or fifteen and with the exception of two years, has averaged at least a half pack per day during this entire period. For the four years immediately preceding the hearing, plaintiff had averaged a pack a day of cigarettes. During the ten years immediately preceding his retirement, plaintiff's respiratory problems became progres-

sively worse, requiring him to take occasional medical leaves of absence from work, and to remain under the regular care of a physician.

Dr. Henderson Mabe, plaintiff's family physician, testified that he had treated plaintiff for approximately ten years prior to the date of the hearing. He stated that he diagnosed plaintiff as suffering from pulmonary emphysema and chronic obstructive lung disease and noted that he was of the opinion that these conditions had rendered him totally disabled. Dr. Mabe also indicated that he recommended that plaintiff apply for disability benefits on the basis of his pulmonary disease.

Subsequent to filing his claim with the Industrial Commission, plaintiff was examined by Dr. Charles D. Williams, Jr., a specialist in pulmonary medicine and member of the Industrial Commission's Textile Occupational Disease Panel. Dr. Williams' testimony was taken in a hearing before Chief Deputy Commissioner Shuford on 6 February 1978. Dr. Williams testified in pertinent part that his predominant diagnosis was that plaintiff had chronic bronchitis, pulmonary emphysema, and possible byssinosis. Dr. Williams went on to note the following: that plaintiff's diseases are due to "causes and conditions more characteristic of the textile industry than other industrial environment"; that plaintiff is disabled for all but sedentary work, provided he has the requisite training and experience; that plaintiff's pulmonary disease is the cause of his disability; that plaintiff's smoking habits likely played a part in the onset of his disability; and that plaintiff's years of exposure to cotton dust could have played a contributory role in causing his disability.

On 15 May 1979, Commissioner Brown filed an Opinion and Award denying plaintiff's claim. On 21 September 1979, the full Commission, with one member dissenting, affirmed and adopted as its own the Opinion and Award of Commissioner Brown, denying plaintiff benefits. Plaintiff appealed.

*Hassell & Hudson, by Charles R. Hassell, Jr. and Robin E. Hudson, for plaintiff appellant.*

*Teague, Campbell, Conely & Dennis, by C. Woodrow Teague, Richard B. Conely, and George W. Dennis III, for defendant appellees.*

Walston v. Burlington Industries

ERWIN, Judge.

By appropriate assignments of error, plaintiff challenges, *inter alia,* the Commission's findings of fact and conclusions of law holding that plaintiff does not have an "occupational disease."

For purposes of our review, the pertinent findings of fact of Commissioner Brown and affirmed by the full Commission are as follow:

"6. . . . Dr. Williams, in his written report, a part of the evidence in this case, gave the following comment:

Mr. Walston's symptoms of shortness of breath appear to be clearly related to pulmonary emphysema and chronic bronchitis and may be, at least in part, related to cigarette smoking. It is also possible that he has had intrinsic asthma which could be confirmed from old Duke Outpatient Clinic records. With this syndrome, he could have noticed an aggravation of his symptoms by dust in the mill as described without necessarily invoking the diagnosis of byssinosis. The history for byssinosis is somewhat equivocal in that he did have exacerbation of symptoms on Monday morning but this occurred immediately on exposure to dust and did not seem to improve during the remainder of the week.

7. Plaintiff's shortness of breath is due to pulmonary emphysema and chronic bronchitis.

*EXCEPTION NO. 1*

8. Plaintiff does not have an occupátional disease.

*EXCEPTION NO. 2"*

On the basis of these findings of fact, the Commission concluded as a matter of law that:

"1. Plaintiff has failed to carry the burden of proof that he has a disease due to causes and conditions characteristic of and peculiar to his employment by defendant. G.S. 97-53(13).

*EXCEPTION NO. 3.*

2. Plaintiff is not entitled to benefits under G.S. 97.

*EXCEPTION NO. 4.*"

In its Opinion and Award of 21 September 1979, the full Commission made the following additional notation: "While the doctor expressed the opinion that plaintiff's exposure to cotton dust 'could possibly' have played a role in causing the pulmonary problems, the doctor further was of the opinion that smoking by plaintiff 'most likely' played a part in causing the pulmonary disability."

[1] In reviewing an award of the Industrial Commission, the inquiry of this Court is limited to two questions of law: (1) whether the Commission's findings are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its legal conclusions. *Inscoe v. Industries, Inc.*, 292 N.C. 210, 232 S.E. 2d 449 (1977). Plaintiff in his initial assignment of error alleges that the Commission's findings of fact regarding the cause of plaintiff's lung disease are not supported by the evidence. We do not agree. We note that the Commission's finding that plaintiff's shortness of breath is due to pulmonary emphysema and chronic bronchitis is merely a restatement of the diagnosis made by Dr. Williams. Dr. Williams testified that there exists a significant link between cigarette smoking and the onset of respiratory diseases such as emphysema and bronchitis. Evidence in the record reveals that although non-disabling at the outset, plaintiff's breathing problems began after he had been both working in defendant's cloth room from eight to ten years, and smoking at least one-half pack of cigarettes a day for some twenty-six years. As it is the exclusive province of the Commission to resolve conflicts in the evidence, *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760 (1950), we hold that the Commission's finding that plaintiff suffered from pulmonary emphysema and chronic bronchitis was supported by competent evidence. We, therefore, overrule this assignment of error.

Plaintiff by his second assignment of error contends that "[t]he Industrial Commission erred in failing to make findings required by G.S. 97-53(13) on the issue of whether plaintiff's lung disease is compensable as an occupational disease." Plaintiff maintains that under certain circumstances, the occupa-

tional aggravation of a non-disabling, non-occupational lung condition may result in an "occupational disease" within the meaning of G.S. 97-53(13) and that where competent evidence to that effect is adduced, the Commission must determine the extent to which the aggravating aspects of plaintiff's employment contribute to the onset of his disability. We are of the view that the position urged by plaintiff correctly states the law in this area and, therefore, reverse the Opinion and Award of the full Commission and remand the case for further findings by the Commission not inconsistent with the guidelines set forth.

G.S. 97-53 of the Worker's Compensation Act sets forth a schedule of diseases which are prima facie "occupational diseases" and compensable as a matter of law. Plaintiff in this case has based his claim for benefits upon a disability allegedly due to chronic obstructive lung disease caused by prolonged exposure to cotton dust. The condition complained of by plaintiff is not listed in the schedule of compensable diseases of G.S. 97-53; therefore, the standard for determining whether it is compensable as an "occupational disease" must be governed by G.S. 97-53(13). That subsection includes within the definition of "occupational disease" the following:

> "Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment."

In *Wood v. Stevens*, 297 N.C. 636, 256 S.E. 2d 692 (1979), our Supreme Court set forth the duties of the Commission in deciding a claim under G.S. 97-53(13).

> "The Commission must determine first the nature of the disease from which the plaintiff is suffering — that is, its characteristics, symptoms and manifestations. Ordinarily, such findings will be based on expert medical testimony. Having made appropriate findings of fact, the next question the Commission must answer is whether or not the illness plaintiff has contracted falls within the definition set out in the statute. This latter judgment requires a conclusion of law."

*Id.* at 640, 256 S.E. 2d at 695-96.

It is well settled that the findings of fact of the Commission are conclusive on appeal if supported by competent evidence. G.S. 97-86. As we have noted, the Commission's Finding of Fact No. 7, that plaintiff suffered from pulmonary emphysema and chronic bronchitis, is supported by competent evidence and is binding upon this Court on our review. It is equally clear, however, that conclusions of law entered by the Commission are not binding on this Court, and are reviewable here for purposes of determining their evidentiary basis and the reasonableness of the legal inferences made therefrom. *Crawley v. Southern Devices, Inc.,* 31 N.C. App. 284, 229 S.E. 2d 325 (1976), *cert. denied,* 292 N.C. 467, 234 S.E. 2d 2 (1977). A conclusion of law is made no less reviewable by virtue of the fact that it is denominated a finding of fact. *Moore v. Adams Electric Co.,* 259 N.C. 735, 131 S.E. 2d 356 (1963). It is apparent from the record that the Commission's Finding of Fact No. 8, that plaintiff does not have an occupational disease, is in reality a determination of the ultimate question presented for decision, and as such, represents a conclusion of law appropriate for our review.

In a case involving a claim for compensation, the Commission must make specific findings of fact as to each material fact upon which the rights of the parties depend, *Morgan v. Furniture Industries, Inc.,* 2 N.C. App. 126, 162 S.E. 2d 619 (1968), and where such findings are insufficient to enable the court to determine the rights of the parties, the cause must be remanded for proper findings. *Thomason v. Cab Co.,* 235 N.C. 602, 70 S.E. 2d 706 (1952). As we have indicated, there was sufficient evidence to show that plaintiff had smoked cigarettes for several years and that prolonged cigarette smoking significantly increases the risk of contracting a respiratory illness. The Commission's finding that plaintiff had contracted bronchitis and emphysema was, therefore, without error. Where, however, such finding is immediately followed by the conclusion that "[p]laintiff does not have an occupational disease," the only reasonable inference to be gleaned therefrom is that, in the view of the Commission, if a condition is non-occupational in its incipience, it is non-compensable as a matter of law notwithstanding the intervention of several years of occupational exposure to hazardous conditions between the time the disease was

contracted and the time it became disabling. We view this failure to inquire into the casual relation between plaintiff's intervening occupational exposure and his resulting disability as error.

In *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979), the Supreme Court identified the elements necessary to prove the existence of an "occupational disease" within the meaning of G.S. 97-53(13). In addition to the statutorily prescribed elements that a disease be "due to causes and conditions which are characteristic" of a particular occupation and that it not be an ordinary disease of life "to which the general public is equally exposed outside of the employment," the Court went on to note that the plaintiff's disability must be fairly traceable to some duty of the employment as a proximate cause. *Id.* at 475, 256 S.E. 2d at 200.

At the hearing before Deputy Commissioner Shuford, the following colloquy between plaintiff's attorney and Dr. Williams occurred:

"Q. (Mr. Hassell) ... Again, Doctor, based on the facts I gave you and your examination and history and tests, do you have an opinion satisfactory to yourself to a reasonable degree of medical certainty as to whether the diseases you found and diagnosed in this man are diseases which are due to causes and conditions more characteristic of the textile industry than other industrial environment?

*  *  *

A. I think that it is.

*  *  *

Q. (Mr. Hassell) Well, again, Doctor, based upon the same set of factors, do you have an opinion satisfactory to yourself and to a reasonable degree of medical certainty as to whether the plaintiff's exposure to cotton dust 30 years in his employment could have caused the respiratory diseases you found in him?

. . . .

A. Yes.

Q. (Mr. Hassell) What is that opinion?

. . . .

A. My opinion is that it could possibly have played a role in the causation of his pulmonary problems. I feel that it would be, if it did, it would be more likely a contributory role rather than a single cause and effect relationship."

This testimony tends to show that the diseases responsible for plaintiff's disability satisfy the statutory requirements of compensability. Its clear import is that: (1) the environmental conditions which characterize plaintiff's place of employment are also substantial factors in causing the diseases of which plaintiff suffers; and (2) plaintiff by virtue of his employment is exposed to such irritants in greater quantities than persons otherwise employed. Defendant, however, contends that in view of plaintiff's history of cigarette smoking, the above-quoted testimony fails to establish the necessary causal link between plaintiff's occupation and his disabling disease. Defendant maintains that, at best, such testimony tends to show only "aggravation" of a preexisting condition which does not satisfy the requirement of proof of causation. We do not agree.

Where a claimant's right to recovery is based on an injury by "accident," the rule of causation under our act is that the employment need not be the sole causative force to render the injury compensable. In *Vause v. Equipment Co.*, 233 N.C. 88, 63 S.E. 2d 173 (1951), the Supreme Court noted that where an employee "by reason of constitutional infirmities is predisposed to sustain injuries while engaged in labor, nevertheless the leniency and humanity of the law permit him to recover compensation if the physical aspects of the employment contribute in some reasonable degree to bring about or intensify the condition" which results in disability. *Id.* at 92, 63 S.E. 2d at 176 (1951). In *Kennedy v. Martin Marietta Chemicals*, 34 N.C. App. 177, 237 S.E. 2d 542 (1977), recovery was allowed where the cause of an employee's fatal heart attack was found to be a preexisting heart condition which was aggravated when he was suddenly overcome by gaseous fumes while working in one of his employer's storage tanks. In *Pruitt v. Publishing Co.*, 27 N.C. App. 254, 218 S.E. 2d 876 (1975), *rev'd on other grounds*, 289 N.C. 254, 221 S.E. 2d 355 (1976), an employee who aggravated a

preexisting back injury while working was awarded full compensation where evidence tended to show that twenty-five percent of his thirty-five percent permanent disability of the spine was attributable to the former injury with only the remaining ten percent being attributed to the injury suffered while working for the defendant. In *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 117 S.E. 2d 476 (1960), an employee whose job required him to drive an automobile on service calls for his employer and who for several years had been subject to "blackout spells" was allowed to recover for injuries sustained in an accident caused when he "blacked out" and drove into a pole upon returning to the employer's place of business from one such service call. These cases are illustrative of the well settled principle in the area of worker's compensation law that an employee's unique susceptibility to injury because of a disease or disability which predates his employment "affords no sound basis for a reduction in the employer's liability." *Pruitt v. Publishing Co.*, 27 N.C. App. at 257, 218 S.E. 2d at 879.

Neither the briefs of counsel nor our own independent research has disclosed any authority in this jurisdiction directly addressing the question of whether occupational aggravation of a preexisting condition results in an "occupational disease" within the meaning of G.S. 97-53(13); *Cf. Morrison v. Burlington Industries*, 47 N.C. App. 50, 266 S.E. 2d 741 (1980). We find it instructive, however, to note the consideration given the question by the courts of other jurisdictions with worker's compensation statutes substantially similar to our own. While there continues to be divergence of opinion on the question, the majority, and we think better, view appears to be that succinctly stated by Professor Larson: "[W]hen distinctive employment hazards act upon these preexisting conditions to produce a disabling disease, the result is an occupational disease." 1 B. Larson, Workmen's Compensation Law, § 41.63, 7-418 (1980). *See, e.g., National Zinc Co. v. Hainline*, 360 P. 2d 236 (Okla. 1961); *Smith v. I.R. Equipment Corp.*, 60 A.D. 2d 746, 400 N.Y.S. 2d 900 (1977); *Hutcheson v. Weyerhaeuser Co.*, 288 Or. 51, 602 P. 2d 268 (1979); *Zallea Bros. v. Cooper*, 53 Del. 168, 166 A. 2d 723 (1960); *Bond v. Rose Ribbon & Carbon Mfg. Co.*, 78 N.J. Super. 505, 189 A. 2d 459 (1963), *aff'd.*, 42 N.J. 308, 200 A. 2d 322 (1964).

[2] The occupational disease provisions of the North Carolina Worker's Compensation Act are clearly an integrated part of

the entire Act and must be construed in light of the same liberal principles as are applied in cases of injury by accident. Since a disability resulting from an accidental injury which aggravates a preexisting infirmity is fully compensable, we can perceive of no valid reason why a different rule should pertain where, as here, the evidence tends to show that the plaintiff's exposure to environmental irritants on his job precipitated the onset of a disability which did not previously exist. We hold, therefore, that where an employee is in his work place exposed to environmental irritants which in fact hasten the onset of a disabling condition which did not previously exist, such aggravation is tantamount to causation for purposes of G.S. 97-53(13), and the resulting disability is an "occupational disease" thereunder. Defendant's reliance upon this Court's recent decision in *Moore v. Stevens & Co.*, 47 N.C. App. 744, 269 S.E. 2d 159 (1980), is misplaced. In that case, the Industrial Commission made specific findings that the employee's disability was not caused by her exposure to cotton dust. Because in the case *sub judice* the Industrial Commission made no findings with respect to the extent to which plaintiff's exposure to cotton dust contributed to the onset of his disabling disease, the Opinion and Award of the full Commission is

Reversed and remanded.

Judges ARNOLD and WELLS concur.