EVANGELINE SCOTT DANCY, EMPLOYEE, PLAINTIFF v. ABBOTT LABORATORIES, EMPLOYER, SELF/FIREMAN'S FUND INSURANCE COMPANY, DEFENDANT

No. COA99-683

(Filed 15 August 2000)

**Workers' Compensation— Form 21 agreement—subsequent Form 26 agreement—burden of establishing total disability**

The Industrial Commission erred by concluding that defendants had the burden of presenting evidence to rebut a presumption of continued total disability raised by a Form 21 agreement where the parties subsequently signed a Form 26 supplemental agreement under which the employer agreed to pay plaintiff for a temporary partial disability at a reduced rate for a two-week period. There was no language in the Form 26 agreement indicating that plaintiff would return to her previous status of temporary total disability; resolution of the issue is determined by the terms of the agreement between the parties and the burden on remand is on plaintiff to establish total disability.

Judge GREENE dissenting.

Appeal by defendants from Opinion and Award entered 26 February 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 March 2000.

*Ralph G. Willey, P.A., by Ralph G. Willey, III, for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Michael C. Sigmon, Matthew Blake, and Joy H. Brewer, for defendant-appellants.*

EDMUNDS, Judge.

Plaintiff Evangeline Dancy (plaintiff) was employed by defendant Abbott Laboratories (employer) for approximately fifteen years. (Where appropriate, employer and its insurer, Fireman's Fund Insurance Company, will be designated collectively as defendants.) While working in the overwrap department, she began to experience pain and numbness in her hands. On 15 May 1991, plaintiff complained of pain in her arms and shoulders to Dr. Margaret Sowerwine, employer's physician. Although nerve conduction tests of plaintiff's upper extremities were within normal limits, Dr. Sowerwine believed plaintiff was developing bilateral carpal tunnel syndrome. Plaintiff returned to work with wrist splints.

In October 1991, employer transferred plaintiff from the overwrap department to the "fab and print" department in hopes of alleviating her pain. In February 1992, plaintiff returned to Dr. Sowerwine complaining of numbness and burning pain in her right hand. On 8 March 1992, plaintiff visited orthopaedic surgeon Dr. Greg Nelson, who examined plaintiff and diagnosed her as suffering from bilateral carpal tunnel syndrome with the right hand being in worse condition than the left.

On 16 March 1993, employer completed a Form 21 agreement accepting responsibility for plaintiff's bilateral carpal tunnel syndrome. (Details of this and other pertinent Industrial Commission forms will be discussed below.) Plaintiff underwent right carpal tunnel release surgery on 30 March 1993, and on 2 April 1993, she reported no pain and decreased numbness in her right hand; however, she reported increasing pain in her left wrist. During a 22 April 1993 visit to Dr. Nelson, plaintiff complained of pain in her left wrist. At this time, plaintiff was not working and was receiving benefits while she participated in physical therapy. Dr. Nelson recommended that plaintiff participate in a work-hardening program for two to three weeks, then return to normal work duties.

On 13 May 1993, Nash Day Occupational Therapy reported that plaintiff was "dying of [right] arm, as well as [left] arm pain . . . and it would be pointless to restart work hardening." Dr. Nelson stopped plaintiff's physical therapy and referred her to Nash General Hospital, where additional testing led Drs. Nelson and Sowerwine to conclude that plaintiff was not suffering from reflex sympathetic dystrophy (RSD). Drs. Nelson and Sowerwine then agreed that because there was no objective evidence to support the degree of constant pain

plaintiff was describing, she should consult a psychologist. Plaintiff began seeing a psychologist but subsequently discontinued her visits and resumed physical therapy.

Dr. Nelson released plaintiff to return to work without restrictions on 10 June 1993, but suggested that plaintiff begin with the least-demanding part of her job and ease back into the more difficult work. Dr. Sowerwine agreed that plaintiff should return to work, but due to the nature of her work, recommended limited hours. Plaintiff resumed work on 14 June 1993, but each day she complained of severe burning pain in both wrists within an hour and was allowed to go home. On 21 June 1993, plaintiff did not think she could continue stacking bags because of her pain and asked to be placed in the overwrap department where she could do inspection work. A disagreement exists between the parties as to whether plaintiff was fired or quit when she was told there were no openings in overwrap, but that disagreement is not germane to our analysis. Employer filled out a Form 28 indicating that plaintiff quit on 21 June 1993 and that it was discontinuing her workers' compensation coverage.

On 6 July 1993, plaintiff and employer signed a Form 26 "Supplemental Memorandum of Agreement as to Payment of Compensation," pursuant to which employer agreed to pay plaintiff for a temporary partial disability at the rate of $113.50 per week for a two-week period that began on 14 June 1993. These were the last worker compensation benefits plaintiff received until she instituted the present action.

Plaintiff began seeing Dr. Robert J. Spinner in the Orthopaedics Department at Duke Medical Center, who made a preliminary diagnosis of bilateral RSD. Nerve conduction testing provided electrophysiologic evidence of mild right carpal tunnel syndrome. Physical examination provided no evidence of left carpal tunnel syndrome or right cervical radioculopathy. Electromyography and nerve conduction studies showed no conclusive deficit to explain the diffuse pain described by plaintiff in both hands, her arms, and neck. Because these findings indicated that plaintiff might be suffering from fibromyalgia, she was referred to Dr. John S. Sundy, a rheumatologist. Dr. Sundy diagnosed plaintiff as suffering from fibromyalgia with muscle spasms, sleep disorder, and depression. He believed that plaintiff's wrist and arm pain, sleeplessness, and fibromyalgia were causing her depression, and her depression, in turn, was aggravating her symptoms of fibromyalgia. Dr. Sundy testified that there is "no known correlation in terms of carpal tunnel [syndrome] causing

fibromyalgia as far as I know." He also stated that he knew of no case where a person's fibromyalgia was aggravated by the development of carpal tunnel syndrome.

Dr. Sundy referred plaintiff to Dr. David F. Naftolowitz in the Psychiatric Department at Duke University Medical Center to treat her depression. Dr. Naftolowitz diagnosed plaintiff as suffering from a somatoform pain disorder, in which a psychological component causes a patient to magnify pain. He summarized plaintiff's condition as follows:

> [T]here's a clear physical basis in the carpal tunnel syndrome which would explain the hand and wrist pain. The remainder of the pain is in somewhat gray areas involving a diagnosis by her rheumatologist of fibromyalgia and then the added component of exaggeration of the pain which could be caused by both the somatoform disorder and major depression for that matter, can also lead to exaggeration of pain complaints.

It was Dr. Naftolowitz' opinion that "the development of carpal tunnel syndrome and the problems with her job was in fact the precipitating factor for [plaintiff's] depression."

On 1 August 1995, plaintiff filed a Form 33 "Request that Claim be Assigned for Hearing," alleging a substantial change in her condition since receiving her last compensation check on 23 June 1993 and seeking temporary total disability benefits. A deputy commissioner heard the case on 19 September 1996 and ordered defendants to resume paying plaintiff temporary total disability benefits beginning 19 September 1996; in his Opinion and Award of 1 May 1998, the deputy commissioner found that defendants failed to rebut plaintiff's presumption of disability. Therefore, he ordered defendants to pay a lump-sum award for temporary total disability compensation that had accrued from 21 June 1993 through 19 September 1996. Defendants appealed to the Full Commission. The Full Commission also placed the burden of proof upon employer to show that plaintiff was no longer temporarily totally disabled and capable of earning pre-injury wages, then concluded as a matter of law:

> Defendant-employer admitted liability for plaintiff's carpal tunnel syndrome by signing the Industrial Commission Form 21 Agreement to pay disability compensation. Once defendant-employer accepted plaintiff's occupational disease as compensable on a Form 21, there was a presumption that her disability

DANCY v. ABBOTT LABS.

[139 N.C. App. 553 (2000)]

continued until she returned to work at wages equal to those she was receiving at the time her injury occurred.

Affirming the deputy commissioner, the Full Commission awarded plaintiff temporary total disability benefits from 21 June 1993 through 19 September 1996 and ordered employer to continue to pay temporary total disability benefits at the rate of $226.96 per week. Defendants appeal to this Court.

"The standard of appellate review of an opinion and award of the Industrial Commission is limited to whether there was any competent evidence before the Commission to support its findings of fact and whether the findings of fact justify the Commission's legal conclusions and decision." *Harris v. North American Products*, 125 N.C. App. 349, 352, 481 S.E.2d 321, 323 (1997) (citation omitted). The Commission's findings "will not be disturbed on appeal if supported by any competent evidence even if there is evidence in the record which would support a contrary finding." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 432, 342 S.E.2d 798, 803 (1986) (citation omitted). However, the Industrial Commission's conclusions of law are reviewable *de novo* by this Court. *See Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 491 S.E.2d 678 (1997).

Defendants argue that the Commission erred (1) in finding that a presumption of temporary total disability arose as a result of the 16 March 1993 Form 21 agreement and (2) in placing upon defendants the burden of overcoming this presumption. Defendants contend that by signing the subsequent 6 July 1993 Form 26 agreement, plaintiff waived the presumption that she was temporarily totally disabled.

When parties enter into a Form 21 agreement, a presumption of disability attaches in favor of the employee. *See Kisiah v. W.R. Kisiah Plumbing*, 124 N.C. App. 72, 77, 476 S.E.2d 434, 436 (1996). Plaintiff had been earning $340.40 per week, and pursuant to the Form 21 agreement, employer agreed to pay her $226.95 per week beginning 3 October 1993 for an undetermined number of weeks. This reduced payment, which was 66⅔% of plaintiff's original wage, is consistent with an agreement that plaintiff was totally disabled. *See* N.C. Gen. Stat. § 97-29 (1999). Although plaintiff briefly returned to work on 14 June 1993, "[a]n employee's release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, nor does it automatically deprive an employee of the [Form 21] presumption." *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994) (citation omitted).

However, on 6 July 1993, employer and plaintiff signed a Form 26 "Supplemental Memorandum of Agreement as to Payment of Compensation," agreeing that on 14 June 1993 plaintiff's weekly earning power was reduced from $340.40 per week to $170.20 per week. Pursuant to this Form 26 agreement, employer agreed to pay plaintiff temporary partial disability benefits of $113.50 per week for two weeks. This agreement, which was signed by plaintiff, her attorney, and a representative of employer, was filed with the Industrial Commission and approved on 19 August 1993.

We have held that

[u]nless the presumption [in favor of disability] is waived by the employee, no change in disability compensation may occur absent the opportunity for a hearing. . . . [O]ne such way a waiver might occur is when an employee and employer settle their compensation dispute in a manner consistent with N.C. Gen. Stat. § 97-17 [(1999)], and that settlement is subsequently approved by the Commission.

*Kisiah,* 124 N.C. App. at 81, 476 S.E.2d at 439 (internal citations omitted). Section 97-17 reads in pertinent part:

Nothing herein contained shall be construed so as to prevent settlements made by and between the employee and employer so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this Article. A copy of such settlement agreement shall be filed by employer with and approved by the Industrial Commission: Provided, however, that no party to any agreement for compensation approved by the Industrial Commission shall thereafter be heard to deny the truth of the matters therein set forth . . . .

N.C. Gen. Stat. § 97-17. Section 97-82(a) provides: "If the employer and the injured employee or his dependents [do] reach an agreement in regard to compensation under this Article, they may enter into a memorandum of the agreement in the form prescribed by the Commission." N.C. Gen. Stat. § 97-82(a) (1999). "[I]t has been uniformly held that an agreement for the payment of compensation, when approved by the Commission, is as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal." *Pruitt v. Publishing Co.,* 289 N.C. 254, 258, 221 S.E.2d 355, 358 (1976) (citations omitted).

**DANCY v. ABBOTT LABS.**

[139 N.C. App. 553 (2000)]

We believe the resolution of this case is controlled by our Supreme Court's decision in *Saunders v. Edenton Ob/Gyn Center*, 352 N.C. ——, 530 S.E.2d 62 (2000). In that case, the plaintiff/employee was injured on 7 December 1992. On 28 January 1993, she entered into a Form 21 agreement in which she was compensated for four weeks at a rate consistent with total disability. Thereafter, on 14 April 1993, the plaintiff and employer entered a Form 26 agreement in which the parties agreed that plaintiff was temporarily partially disabled; the time covered by this agreement was indefinite, covering "necessary" weeks. The *Saunders* Court held that the Form 26 supplemental agreement, to which the parties agreed and which the Commission approved, constituted the final agreement, whose terms were binding between the parties. *Id.* at ——, 530 S.E.2d at 65-66.

> Although we agree that the [rebuttable presumption of continuing disability resulting from execution of a Form 21 agreement] was not lost, we disagree that the presumption of total disability was not lost through the subsequent [Form 26] agreement of "partial disability." . . . [That subsequent agreement] precludes coverage for total disability under N.C.G.S. § 97-29, unless plaintiff rebuts the presumption of partial disability through the presentation of evidence supporting total disability at a hearing before the Commission.

*Id.* at ——, 530 S.E.2d at 65.

Comparing the forms completed in *Saunders* and in this case, we see that in *Saunders* the Form 21 agreement, which covered the employee's total disability for four weeks, was followed by a Form 26 agreement, which covered the employee's temporary partial disability for an indefinite period. Conversely, in the case at bar, the Form 21 agreement, which covered employee's total disability for an indefinite period, was followed by a Form 26 agreement, which covered employee's temporary partial disability for two weeks. Here, plaintiff's Form 21 agreement was open-ended as to duration; logically, her later Form 26 agreement with its specific duration superseded the earlier agreement. Consistent with the holding in *Saunders*, a presumption of plaintiff's partial disability survives even though the Form 26 covered only two weeks. There was no language in the Form 26 agreement indicating that plaintiff would return to her previous status of temporary total disability. "[R]esolution of the issue is determined by the terms of the agreement between the parties." *Id.* at ——, 530 S.E.2d at 64. The burden is now on plaintiff to establish her total disability.

Here, as in *Saunders*, the Commission concluded as a matter of law that because defendants had the burden of proof to present evidence sufficient to rebut a presumption of continued total disability raised by the Form 21 agreement, and defendants had not met that burden, plaintiff was entitled to a continuing presumption of total disability. Because these conclusions were reached through an erroneous application of law, we reverse and remand to the Commission for further proceedings in accordance with this opinion. On remand, in her claim for total disability, plaintiff will have the burden of "rebut[ting] the [existing] presumption of partial disability through the presentation of evidence supporting total disability." *Id.* at —, 530 S.E.2d at 65.

Reversed and remanded.

Judge McGEE concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I believe plaintiff is entitled to a presumption of total disability, arising from the execution of the Form 21 agreement, and I, therefore, respectfully dissent.

In this case, plaintiff and employer entered into a Form 21 agreement for an *indefinite* duration that stated plaintiff was totally disabled. Plaintiff and employer subsequently supplemented or amended the Form 21 agreement with a Form 26 agreement. The Form 26 agreement stated plaintiff was partially disabled; however, this Form 26 agreement specified plaintiff's partial disability was for a *definite* period of two weeks. Thus, the terms of the Form 21 agreement remained in effect, except as modified by the Form 26 agreement. Accordingly, at the end of the two-week period specified in the Form 26 agreement, plaintiff was again entitled to benefits consistent with the Form 21 agreement and the presumption of disability arising under that agreement in the event payments (or lack of payments) under the agreement were contested before the Commission.

This result does not contradict the North Carolina Supreme Court's holding in *Saunders v. Edenton Ob/Gyn Center*, 352 N.C. 136, 530 S.E.2d 62 (2000). In *Saunders*, the parties entered into a Form 21 agreement that provided the employee was totally disabled for a *limited* duration of time. *Id.* at 137, 530 S.E.2d at 63. The parties then

HARRISON v. TOBACCO TRANSP., INC.

[139 N.C. App. 561 (2000)]

supplemented the Form 21 agreement with a Form 26 agreement that provided the employee was partially disabled for an *indefinite* period of time. *Id.* In *Saunders*, the court held the Form 26 agreement constituted the "final terms which became binding between the parties." *Id.* at 140, 530 S.E.2d at 65. Unlike the case *sub judice*, the duration of the Form 21 agreement in *Saunders* was limited and the duration of the subsequent Form 26 agreement was unlimited. The employee in *Saunders* was, therefore, no longer entitled to a presumption of total disability, as the employee's entitlement under the Form 21 agreement terminated upon the expiration of the period designated in that agreement. Accordingly, the relevant agreement in *Saunders* was the Form 26 agreement and any presumption the employee was entitled to receive was pursuant to that agreement.

In this case, because plaintiff was entitled to a presumption of total disability based on the Form 21 agreement and that agreement is the relevant agreement (benefits under the Form 26 agreement having expired), I would affirm the opinion and award of the Full Commission which gave plaintiff the benefit of the total disability presumption.