* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms the holding, but modifies entirely the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as: *Page 2 
 STIPULATIONS
1. It is stipulated that all parties are properly before the North Carolina Industrial Commission, and that the Commission has jurisdiction over the parties and over the subject matter pursuant to the North Carolina Workers' Compensation Act (Act).
2. It is stipulated that all parties have been correctly designated and that there is no question as to misjoinder or nonjoinder of parties.
3. At the time of the injury by accident, the parties were subject to and bound by the provisions of the Act, and there was an employer/employee relationship between the parties with defendant-employer being insured by Aetna Life and Casualty Company.
4. All parties admit that on March 8, 1990, plaintiff sustained an injury by accident arising out of and in the course of his employment.
5. It is stipulated that the average weekly wage as reported on the Form 21 is $258.81, resulting in a compensation rate of $172.54.
6. The Pre-Trial Agreement dated February 18, 2002, which was submitted by the parties is incorporated by reference.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDING OF FACT
1. This case involves an admittedly compensable injury that occurred on March 8, 1990. Plaintiff's immediate complaints were of low back pain radiating into his right leg. A Form 21 agreement to pay compensation for "necessary weeks" was approved by the Commission on April 2, 1990 giving plaintiff a presumption of continuing disability due to the *Page 3 
admitted low back injury. Plaintiff returned to work on at least two occasions. Temporary total disability compensation was reinstated on June 28, 1990, on a Form 26 agreement to pay compensation for "necessary weeks." On July 13, 1990, defendants filed a Form 24 application to stop payment of compensation that was approved by the Commission on the same date.
2. Defendants submitted a second Form 26 agreement to the Commission for approval in October 1990, stating that plaintiff had reached maximum medical improvement, and agreeing to pay plaintiff for a ten percent (10%) permanent partial impairment to his back. The Commission approved this Form 26 agreement on November 1, 1990. On December 11, 1990, a Form 28B was filed stating that the case was being closed by defendants-carrier.
3. Agreeing that plaintiff became totally disabled again on July 23, 1991, and agreeing to reinstate temporary total disability for "necessary weeks," the parties executed a third Form 26 agreement. Plaintiff again had a presumption of continuing temporary total disability based on this agreement.
4. On December 16, 1991, the parties executed a fourth Form 26 agreement stating that plaintiff reached maximum medical improvement, and had a fifteen percent (15%) permanent partial impairment rating, and further agreeing to pay plaintiff for the five percent (5%) increase in his permanent partial impairment rating to his back. The Commission approved this Form 26 agreement on January 7, 1992. Defendants-carrier again filed a Form 28B stating the case was closed.
5. The parties executed a fifth Form 26 agreement for payment of continuing temporary total disability compensation beginning March 4, 1993. The Commission approved this Form 26 agreement on May 11, 1993. Plaintiff again had a presumption of continuing temporary total disability compensation under this agreement. *Page 4 
6. On November 11, 1993, plaintiff reached the end of his healing period. Specifically, plaintiff was capable of earning wages in sedentary work with no bending and twisting, with sitting and standing, and if sitting, being provided a couple of minutes every half hour to stand. Plaintiff was assigned a twenty-five percent (25%) permanent partial impairment rating to the back, an increase of ten percent (10%) over the prior ratings. Defendants paid plaintiff for his increase in permanent partial impairment rating.
7. On May 10, 1994, the Commission ordered plaintiff to cooperate with vocational rehabilitation efforts. On May 25, 1994, the Commission denied defendants' Form 24 application to stop payment of compensation.
8. Defendants filed another Form 24 application dated October 24, 1994, alleging that plaintiff "does not wish to comply with vocational rehabilitation." Plaintiff filed a response and on November 30, 1994, the Commission denied defendants' Form 24 application. By November 1994, the Form 24 application process was being handled by the Executive Secretary's Office, rather than the Industrial Commission's Claims Department. Defendants filed another Form 24 application on May 17, 1995, again alleging that plaintiff failed to comply with vocational rehabilitation offered by defendants. The Form 24 application was approved on July 5, 1995, retroactive to May 5, 1995.
9. Plaintiff filed a Form 33 request for hearing on April 17, 1996, alleging that defendants refused to pay permanent and total disability compensation to plaintiff.
10. On June 24, 1996, plaintiff filed a Motion for Reinstatement of Benefits stating, (a) he had fully complied with defendants' "alleged rehabilitation efforts;" (b) to the extent the Commission found he failed to comply, he now stood ready, willing and able to "fully and *Page 5 
completely cooperate" with any and all rehabilitation efforts by defendants, its carrier, or any of its agents or employees; and (c) he was totally and permanently disabled.
11. A hearing was conducted before a Deputy Commissioner on December 19, 1996. The Deputy Commissioner framed the issue as follows: (a) has plaintiff participated in the program which he was requested to participate in by vocational rehabilitation and other programs by defendants; and (b) should plaintiff's compensation be reinstated. The Deputy Commissioner after hearing the evidence ruled from the bench and found plaintiff had participated in vocational rehabilitation in a reasonable fashion as appropriate under the provisions of the Act and temporary total disability payments should be reinstated.
12. The Deputy Commissioner further found that plaintiff's entitlement to temporary total disability ended when he reached maximum medical improvement on November 7, 1996 and thereafter plaintiff was only entitled to payment of his permanent partial impairment rating. No evidence was taken regarding plaintiff's disability after he reached maximum medical improvement.
13. Both plaintiff and defendants appealed to the Full Commission. By Opinion and Award filed March 17, 1999, the Full Commission reversed the Deputy Commissioner's Opinion and Award and concluded:
 (a) Plaintiff failed to cooperate with vocational rehabilitation even after being ordered to cooperate by the Commission;
 (b) Defendants were entitled to terminate plaintiff's compensation for failure to cooperate with vocational rehabilitation; and *Page 6 
 (c) Plaintiff reached the end of his healing period on November 3, 1993, but did not reach the end of his vocational rehabilitation period until May 5, 1995, when he refused to cooperate with vocational rehabilitation.
The Full Commission only paid plaintiff the compensation due according to his increase in permanent partial impairment rating not previously paid.
14. Plaintiff filed a Notice of Appeal to the North Carolina Court of Appeals on March 30, 1999. On April 1, 1999, plaintiff sent defendants a letter stating again his willingness to cooperate with vocational rehabilitation. On May 16, 2000, the Court of Appeals issued a decision affirming in part, reversing in part and remanding this case to the Full Commission. The Court of Appeals found "plenary competent evidence" to support the Commission's findings regarding plaintiff's non-compliance with vocational rehabilitation and affirmed the Full Commission on this issue.
15. The Court of Appeals found, however, that the Commission was only authorized to suspend benefits until plaintiff's unjustified refusal to cooperate ceased, not terminate benefits for such failure to cooperate. The Court of Appeals reasoned that the terminology of the Commission's Opinion and Award effectively terminated plaintiff's right to receive future temporary or permanent disability benefits. The Court of Appeals reversed the part of the Commission's decision which terminated plaintiff's compensation, rather than suspending it and directed that the Commission's decision on remand must reflect the fact that plaintiff may again be entitled to weekly compensation benefits "upon a proper showing by plaintiff that he is willing to cooperate with defendants' rehabilitative efforts." *Page 7 
16. On December 8, 2000, the Full Commission entered an Order denying plaintiff's Motion for Resumption of Benefits stating that "plaintiff has not made a proper showing nor has he affirmatively established that he is willing to cooperate with defendants' rehabilitative efforts.
17. On December 8, 2000, the Full Commission also entered an Amended Opinion and Award based on the Court of Appeals remand. The only substantive change in terminology in the Opinion and Award was to change to the word "terminate" to "suspend" and to further add the sentence, "Plaintiff will only be entitled to weekly compensation benefits upon a proper showing by plaintiff that he is willing to cooperate with defendants' rehabilitative efforts." The Commission again concluded that plaintiff reached the end of his healing period on November 11, 1993, and reached the end of his vocational rehabilitation period on May 5, 1995, "when it became clear that plaintiff refused to comply with vocational rehabilitation efforts." The Full Commission again found that as of November 11, 1993, plaintiff was capable of earning wages in sedentary work with restrictions and awarded plaintiff compensation for the twenty-five percent (25%) permanent partial impairment of his back, subject to defendants' offset for forty-five (45) weeks already paid. Plaintiff appealed to the Court Appeals on January 3, 2001, but the appeal was never perfected.
18. Plaintiff's acceptance of the Commission's determination that plaintiff was capable of earning wages and the Commission's award of compensation for his rating under N.C. Gen. Stat. § 97-31 ended his presumption of continuing total disability.
19. On December 20, 2000, plaintiff's attorney wrote Linda DeBear, Rehabilitation Coordinator, asking what rehabilitation had been offered to plaintiff since May 5, 1995, and the date of suspension of his compensation. Plaintiff also reiterated that he was ready and willing to cooperate with vocational rehabilitation. *Page 8 
20. On April 5, 2001, plaintiff filed at the Executive Secretary's Office a Motion to Resume Payment of Temporary Total Workers' Compensation Benefits, stating that defendants refused to provide vocational rehabilitation despite the fact that plaintiff had repeatedly expressed willingness to cooperate with vocational rehabilitation efforts.
21. On April 20, 2001, Executive Secretary Tracey Weaver entered an Administrative Order stating, "Due to the fact that the issues contained in the Opinion and Award filed on March 17, 1999 are currently on appeal to the North Carolina Court of Appeals, IT IS HEREBY ORDERED that the plaintiff's Motion is denied in the administrative forum."
22. On June 13, 2001, plaintiff filed a Form 33 request for hearing stating, "I have not received any temporary total benefits since May 5, 1995 and have not returned to gainful employment."
23. A hearing was held before Deputy Commissioner Morgan S. Chapman on February 18, 2002. The Pre-Trial Agreement identified the following as the issue to be heard: "Has the claimant shown he is ready, willing and able to cooperate with rehabilitation efforts and should temporary total disability benefits be resumed?"
24. Deputy Commissioner Chapman issued an Opinion and Award on May 20, 2002, finding that plaintiff's verbal assurances of cooperation were not credible because of his previous problems complying with rehabilitation and plaintiff's appearance and demeanor at the hearing, and denied plaintiff's claim for reinstatement of temporary total disability.
25. At the hearing before the Deputy Commissioner, plaintiff presented the following testimony in support of his claim that he has shown that he is ready, willing and able to cooperate with rehabilitation and that his temporary total disability compensation should be resumed: *Page 9 
 (a) His condition has not improved since his injury and he continued to be treated by Dr. Rick and his family physician for pain control.
 (b) Defendants had not provided him with any vocational rehabilitation services since the Form 24 application was approved [May 5, 1995].
 (c) He had expressed his willingness to fully cooperate with any vocational rehabilitation efforts that defendants provided. Plaintiff testified that he authorized his attorney to write numerous letters expressing his willingness to cooperate with vocational rehabilitation, to defendants, defendants' attorney, the Industrial Commission and his previous rehabilitation provider; that he had submitted a motion for reinstatement of compensation and an affidavit both expressing his willingness to fully cooperate with any vocational rehabilitation offered by defendants.
 (d) He has at all times since June 26, 1996, been willing to fully cooperate with any vocational rehabilitation offered by defendants.
 (e) He believed that he had fully cooperated with vocational rehabilitation prior to the suspension of his compensation in 1995.
 (f) Since June 26, 1996, defendants have not offered him any medical services, despite his requests for services.
 (g) He has not been able to work since June 26, 1996.
 (h) He talked to and filed an application for services with the North Carolina Division of Vocational Rehabilitation Services (State Vocational Rehabilitation Services). Plaintiff's application was dated February 14, 2002. *Page 10 
26. At the hearing, defendants elicited testimony from plaintiff that he was receiving social security disability; he had not applied for unemployment compensation; he had not worked or looked for work since June 1, 1996; he had not made any efforts to return to school or seek vocational retraining; and he did not know that he could get help from State Vocational Rehabilitation Services until four days prior to hearing and he immediately thereafter applied for assistance.
27. It is undisputed that plaintiff has repeatedly expressed his willingness to cooperate with vocational rehabilitation offered by defendants. He continued to make such verbal assurances in his testimony at the hearing.
28. Simultaneously with his assurances at the hearing that he was ready and willing to cooperate, plaintiff also testified that he has not been able to work since June 26, 1996, and believed he had fully cooperated with vocational rehabilitation.
29. Plaintiff appealed to the Full Commission and the case was reviewed on November 12, 2002. The Full Commission entered an Order on May 9, 2003, ordering plaintiff to submit to an independent medical examination to determine whether he was able to work.
30. As to plaintiff's testimony that he believed he had fully cooperated with vocational rehabilitation, the Full Commission, like the Deputy Commissioner, cannot accept this testimony as credible in light of plaintiff's prior conduct as more fully set forth in the prior Opinion and Awards of the Full Commission and the decision of the Court of Appeals. As found by the Court of Appeals, defendants offered plaintiff assistance with his expressed interest in starting a business as a tattoo artist, but plaintiff soon abandoned these efforts. Defendants scheduled plaintiff to attend a job club, but plaintiff would not attend citing transportation problems. Defendants provided an opportunity for plaintiff to participate in Work Alternatives, but plaintiff missed seven *Page 11 
of thirty-four appointments, citing pain and transportation as the reasons even though defendants offered to provide transportation after the Commission ordered plaintiff to cooperate with vocational rehabilitation, and plaintiff attended only eleven of forty-nine appointments at a work program arranged for him by defendants at Harnett Production Enterprises. Although he continually complained of pain and cited pain as a reason for his poor attendance at vocational rehabilitation programs, plaintiff refused to attend a three-week program at a spine center recommended by his treating physician, Dr. Rich, to help maximize his ability to function. Plaintiff's stated reasons for such refusal were he did not want to be away from his son for that amount of time and the program would be a waste of time and would not benefit him.
31. Considering his past conduct, the Full Commission finds that if plaintiff is of the opinion that he fully cooperated with previous vocational rehabilitation, his current written assurances of willingness to cooperate are probably a forecast of more of the same conduct.
32. Dr. Rich performed the independent medical examination ordered by the Commission and was subsequently deposed. As to plaintiff's contention that he is not able to work, Dr. Rich testified that plaintiff's clinical presentation at the time of his independent medical examination was essentially the same as it was when he last evaluated plaintiff for his low back problem on November 11, 1993, and he found no reason to recommend against plaintiff attempting to find work as long as his medications did not interfere with job safety.
33. The Full Commission finds that plaintiff has not proven that his pain prevented him from participating in vocational rehabilitation efforts or independent job search efforts. Plaintiff is physically able to seek suitable employment.
34. Defendants contend that plaintiff's willingness to cooperate is only the secondary issue and that the real issue currently is whether plaintiff has met his burden of demonstrating *Page 12 
disability, or change of condition. A prior Opinion and Award of the Full Commission found that plaintiff had reached maximum medical improvement, plaintiff was capable of earning wages in sedentary work with certain restrictions, and that plaintiff was entitled to payment for his permanent partial impairment rating.
35. As to defendants' argument that plaintiff must now show change of condition, plaintiff's Form 33 request for hearing filed in 2001, meets the requirements of filing a claim for change of condition; however, since plaintiff's entitlement to weekly compensation benefits was only suspended, plaintiff's claim is still pending and change of condition under N.C. Gen. Stat. § 97-47, would not apply to this claim.
36. The final decision by the Full Commission that plaintiff had reached maximum medical improvement, was capable of sedentary work and was entitled to payment for permanent partial disability based on his twenty-five percent (25%) rating ended plaintiff's presumption of continuing total disability. Plaintiff thereafter had the burden of proving he was totally disabled. Plaintiff's evidence shows he is medically capable of performing sedentary work or at the very least, attempting sedentary work. Since plaintiff has not sought suitable employment, or shown that seeking suitable employment would be futile, plaintiff has not proven he is totally disabled.
37. Even though a Plaintiff's written assurance of intent to cooperate with vocational rehabilitation may be sufficient, based on the greater weight of the evidence the plaintiff in this case did not make a proper showing that he was willing to cooperate with vocational rehabilitation through his written declarations of willingness to cooperate or through his application for vocational assistance through the State Vocational Rehabilitation Program several days prior to the hearing before the Deputy Commissioner. Moreover, since plaintiff did not have a presumption of continuing total disability, he had the burden of proving that he was totally *Page 13 
disabled from work in any employment. Since plaintiff has not met his burden of proving total disability, defendants were not obligated to resume payment of total disability compensation to plaintiff.
38. The medical treatment plaintiff received for his compensable injury, was causally related to his workplace injury and was reasonably required to effect a cure, provide relief and lessen his disability.
39. Defendants are obligated to provide all reasonably required medical treatment for plaintiff resulting from his compensable injury for so long as such treatment is reasonably required to effect a cure, provide relief or lessen his disability.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's written declaration that he is ready and willing to cooperate with vocational rehabilitation services offered by defendants and his application for assistance with the State Vocational Rehabilitation Program in this case did not constitute a proper showing that plaintiff's unjustified refusal to cooperate had ceased. Moreover, plaintiff's presumption of total disability had ended and plaintiff was required to prove continuing disability. Dancy v. AbbottLaboratories, 353 N.C. 446; 545 S.E.2d 211 (2001); 139 N.C. App.553;534 S.E.2d 601 (2000).
2. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent.Perkins v. U.S. Airways, ___ N.C. App. ___, 628 S.E.2d 402 (2006). The burden may be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, *Page 14 
incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment[;] or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Here the evidence shows that plaintiff reached maximum medical improvement and was capable of performing sedentary work or at the very least, attempting sedentary work by May 5, 1995. Plaintiff has not sought suitable employment, nor has he shown that seeking suitable employment would be futile. Plaintiff has not looked for work, so he has not established that his wage-earning capacity is diminished and the medical evidence does not establish that he is partially disabled.
3. Plaintiff is not entitled to have compensation reinstated for total disability. N.C. Gen. Stat. § 97-18.1; Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Plaintiff has not proven that he has been totally disabled or had diminished wage-earning capacity after May 5, 1995. Demery v. Converse,Inc., 138 N.C. App. 243, 250, 530 S.E.2d 871, 875 (2000).
5. Plaintiff is entitled to payment of medical expenses incurred or to be incurred in the future as a result of his compensable injury, for so long as such medical treatment is reasonably necessary to effect a cure, provide relief and lessen his disability. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following: *Page 15 
 AWARD
1. Plaintiff's claim for additional indemnity compensation is DENIED.
2. Defendants shall pay all past and future medical expenses that are reasonably related to plaintiff's injury when bills are submitted and approved according to procedures adopted by the Commission.
3. Each side shall bear its own costs.
This the ___ day of August 2006.
S/________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/________________________ CHRISTOPHER SCOTT COMMISSIONER
S/________________________ DIANNE C. SELLERS COMMISSIONER *Page 1